Lazaro BARRIOS, Petitioner,

v.

Richard THORNBURGH, Attorney General of the United States, Respondent.

No. CIV–90–1256–W.

United States District Court, W.D. Oklahoma.

Dec. 27, 1990.

Lazaro Barrios, El Reno, Okl., pro se.

Timothy D. Leonard, U.S. Atty. and M. Kent Anderson, Asst. U.S. Atty., Oklahoma City, Okl., for respondent.

## MEMORANDUM OPINION AND ORDER

LEE R. WEST, District Judge.

This is a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 by an individual who is being detained at the Federal Correctional Institution, El Reno, Oklahoma. Petitioner is a native and citizen of Cuba, having arrived in the United States on May 8, 1980, at Key West, Florida, as part of the Mariel boatlift. Petitioner admits that he is an "excludable alien" being held under the Respondent's statutory grant of authority to detain excludable aliens, 8 U.S.C. § 1227. However, Petitioner contends that he cannot be returned to Cuba and that Respondent does not have the statutory authority to detain him indefinitely. Petitioner also contends that he has a due process liberty interest under the United States Constitution and that his continued detention, as well as the procedures employed by Respondent to justify his continued detention, violate Petitioner's right to due process. Finally, Petitioner contends that his prolonged detention violates customary international law and is therefore illegal.

Respondent has filed an Answer and Return to the Petition, as well as a Memorandum Brief opposing the Petition.

Petitioner is being held in federal custody within this judicial district, and his habeas Petition alleges violations of federal and constitutional law. Therefore, this Court has jurisdiction to review the merits of his claims. 8 U.S.C. §§ 1105a(a)(9), 1329; 28 U.S.C. § 2241; *see Rafeedie v. INS*, 688 F.Supp. 729, 737 (D.C.1988), *aff'd in part and reversed on other grounds*, 880 F.2d 506 (D.C.Cir.1989) (exhaustion of administrative remedies not required in challenge to immigration exclusion procedures on broad statutory and constitutional grounds outside agency's area of expertise).

## FACTUAL BACKGROUND

According to recent government reports, approximately 125,000 undocumented Cubans came to this country during 1980 from the Cuban port of Mariel. About 25,000 of these aliens admitted they had prior criminal records in Cuba or had been taken from Cuban prisons or mental hospitals and placed by Cuban officials on boats bound for the United States. Upon their arrival, the "Mariel Cubans" were screened by federal officials. A vast majority of the Cubans, including Petitioner, were released on immigration parole under authority of the Immigration and Nationality Act, 8 U.S.C. § 1182(d)(5).

Cuba and the United States reached an agreement in 1984 in which Cuba agreed to the repatriation of 2,746 named Mariel Cubans. In 1985, 201 detained Cubans were repatriated or deported to Cuba pursuant to orders of exclusion or voluntarily. In May of 1985, the Cuban government suspended implementation of the migration agreement. In November of 1987, Cuba

and the United States agreed to reimplement the 1984 agreement. This decision spawned riots by detained Mariel Cubans. When the riots ended in December, 1987, the aliens had destroyed a federal Immigration and Naturalization Service (INS) detention center and caused major damage to a federal prison. *See* Declaration of John A. Simon, Deputy Assistant Commissioner of INS, Government Exhibit 1 to Respondent's Answer and Memorandum.

Following Petitioner's arrival in the United States, he was granted immigration parole and was sponsored to Miami, Florida. Petitioner has since been convicted of state charges in Oklahoma of Unlawful Delivery of Marijuana, for which he received a 3 year sentence (CRF–82–4351), and in 1987, Petitioner was convicted in the District Court of Tulsa County of Unlawful Possession of a Controlled Drug (Cocaine) with Intent to Distribute (Judgment and Sentence on Plea of Guilty entered January 9, 1987) (CRF–86–3054, Ct. 1), Possession of a Firearm in the Commission of a Felony (Judgment and Sentence on Plea of Guilty entered January 9, 1987) (CRF–86–3054, Ct. 2), Shooting With Intent to Kill (Judgment and Sentence on Plea of Guilty entered January 9, 1987) (CRF–86–2067, Ct. 1), Possession of a Firearm After Former Conviction of a Felony (Judgment and Sentence on Plea of Guilty entered January 9, 1987) (CRF–86–2067, Ct. 2), and Unlawful Possession of Marijuana, Second Offense (Judgment and Sentence on Plea of Guilty entered January 9, 1987) (CRF–86–3070). Petitioner received 5 year concurrent sentences for each of the 1987 convictions.

Petitioner's immigration parole was terminated by the INS on October 2, 1989. On October 10, 1989, Petitioner received notice that he would be scheduled for a hearing before an immigration judge to determine whether or not he should be excluded and deported.

Following a "panel review interview" conducted by the INS with Petitioner at the El Reno facility on November 29, 1989, the Associate Commissioner for Enforcement notified Petitioner on March 22, 1990, of the Commissioner's finding that Petition-

er's release on parole was not warranted at that time and would not be in the public interest, given Petitioner's criminal history. The notice also informed Petitioner that the INS would reconsider his parole status within a year.

■ The admission of aliens to the United States is a privilege granted by the United States government and not a right. *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982); *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 542, 70 S.Ct. 309, 312, 94 L.Ed. 317 (1950). Thus, Petitioner as a nonresident alien has no constitutional rights regarding his application for entry into this country. *Landon v. Plasencia, supra; Kleindienst v. Mandel,* 408 U.S. 753, 762, 92 S.Ct. 2576, 2581, 33 L.Ed.2d 683 (1972).

■ Congress' authority to prescribe procedures governing the admissibility of aliens is inherent in the executive power to control the foreign affairs of the nation. *Knauff v. Shaughnessy, supra.* Congress has virtually plenary power over the admission or exclusion of aliens. *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977). Congress may authorize executive officers to exercise its inherent power to admit or exclude aliens, and "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Knauff v. Shaughnessy, supra* 338 U.S. at 543–544, 70 S.Ct. at 312–313. *See Jean v. Nelson,* 727 F.2d 957, 968 (11th Cir.1984) (en banc), *aff'd in part on other grounds,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (aliens seeking admission to the United States "have no constitutional rights with regard to their applications and must be content to accept whatever statutory rights and privileges they are granted by Congress.")

■ Congress has delegated to the Attorney General broad power to make policies and regulations for the admission or exclusion of aliens. 8 U.S.C. § 1103(a); *Kleindienst v. Mandel, supra* 408 U.S. at 766–770, 92 S.Ct. at 2583–2586. The Attorney General has statutory authority to de-

tain an alien who arrives in this country without valid documentation. 8 U.S.C. § 1225(b). The Attorney General also has authority to temporarily parole an unadmitted alien and authority to return a paroled alien to custody. 8 U.S.C. § 1182(d)(5). The legislative history of the Immigration and Naturalization Act demonstrates that parole of an unadmitted alien was meant to be the exception rather than the rule. *Amannulah v. Nelson,* 811 F.2d 1, 6 (1st Cir. 1987). *See* S.Rep. No. 748, 89th Cong., 1st Sess., reprinted in 1965 U.S.Code Cong. & Admin.News 3328, 3335: "... The parole provisions were designed to authorize the Attorney General to act only in emergent, individual, and isolated situations, such as the case of an alien who requires immediate medical attention, and not for the immigration of classes or groups outside of the limits of the law."

In the wake of the 1987 riots, the Attorney General has promulgated regulations governing the release of Mariel Cubans on immigration parole. *See* 8 C.F.R. §§ 212.-12 and 212.13 (1990). Petitioner does not deny that the procedures outlined in these regulations have been followed by the INS in his case, and the record shows that the INS has followed the proper procedures, including a review of Petitioner's record, a personal interview of Petitioner, and written notice setting forth the reasons for the decision to deny Petitioner parole. *See id.;* Government Exhibit 13 to Respondent's Memorandum ("Final Notice of Parole Denial").

### A. *The Attorney General's Authority to Detain Petitioner*

■ Petitioner admits that although he was released on immigration parole he is an "excludable alien." *See* 8 U.S.C. § 1182(a)(26) (classifying as excludable aliens nonimmigrants without valid passports, visas, or border crossing identification cards); 8 U.S.C. § 1182(d)(5)(A) (conditional parole of alien into United States is not to be regarded as admission of the alien). However, Petitioner contends that he cannot be returned to Cuba because he is not on the list of Cubans that Cuba has agreed to accept for repatriation, and,

therefore, the Respondent Attorney General has no authority to detain him indefinitely.

Respondent's position is that Petitioner's absence on the negotiated list of Mariel Cubans does not foreclose his eventual return to Cuba. Respondent states that officials of the two governments have met as recently as June 1990 to discuss migration issues between Cuba and the United States. The government of Cuba has not refused to accept the return of all of the Mariel Cubans, and Respondent asserts that there are "very real prospects" for the eventual repatriation of Petitioner if he is found not suitable for admission.

Petitioner cites *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382 (10th Cir.1981), in support of his contention that his continuing detention is unlawful. In *Rodriguez–Fernandez,* the petitioner, also a Mariel Cuban, had been detained upon his arrival in 1980 by U.S. officials and was later declared an excludable alien. At that time, Cuba had been approached to negotiate a return of the Mariel Cubans, but Cuba had refused all requests to repatriate their citizens. Rodriguez–Fernandez had been continually detained in maximum security federal penitentiaries for more than a year when he petitioned for a writ of habeas corpus. He had committed no criminal offense in the United States, although he had admitted a prior criminal history in Cuba. The court of appeals found that the prolonged detention of an alien pending deportation was justifiable "only as a necessary, temporary measure." *Id.* at 1387. The court affirmed the district court's grant of the writ, concluding that Rodriguez–Fernandez' detention was merely an "alternative to exclusion," and the government had shown insufficient reason for his continued incarceration. *Id.* at 1386, 1390.

The claim made by Petitioner has been rejected in *Palma v. Verdeyen,* 676 F.2d 100 (4th Cir.1982), and, most recently, in *Alvarez–Mendez v. Stock,* 746 F.Supp. 1006 (C.D.Calif.1990). In both of these cases, the courts concluded that the circumstances and the facts distinguished the cases from *Rodriguez–Fernandez.*

The Fourth Circuit Court of Appeals in *Palma v. Verdeyen, supra,* found that the Attorney General was implicitly authorized by Congress to order the indefinite detention of excludable aliens who could not immediately be returned to their homeland. *Id.* at 104. The court in *Palma* further found that the Attorney General had complied with the proviso in 8 U.S.C. § 1227(a), which protects against arbitrary detention of excludable aliens by mandating immediate deportation of the aliens "... unless the Attorney General, in an individual case, in his discretion, concludes that immediate deportation is not practicable or proper."

Additionally, the appellate court found that unlike the circumstances before the Tenth Circuit in *Rodriguez–Fernandez v. Wilkinson, supra,* the Attorney General had revised his procedures to provide for an individual consideration of immigration parole. *Id.* at 104–105. The Attorney General had followed those procedures in Mayet Palma's case and had determined that his immediate deportation was proper, though impracticable and that he was not suitable for parole. *Id.* at 105. Because Mayet Palma had two convictions for theft in Cuba and he had committed numerous disciplinary infractions while in detention, the court found the Attorney General did not act arbitrarily or abuse his discretion by detaining Mayet Palma pending deportation. *Id.*

In *Alvarez–Mendez v. Stock, supra,* the Petitioner, also a Mariel Cuban, asserted as Petitioner does herein, that the Attorney General had no authority to detain him. The district court reviewed Alvarez–Mendez' history, which included several criminal offenses in Cuba and several serious offenses committed in the United States while Alvarez–Mendez was on immigration parole. Alvarez–Mendez' immigration parole was revoked, and he was detained based on the Attorney General's determination that he was unsuitable for parole. The district court found that the Attorney General's individual determination made under established review procedures, as well as the fact that Mayet Palma committed criminal offenses while he was on parole, distinguished the case from *Rodriguez–Fernan-*

*dez v. Wilkinson, supra. Id.* at 1012–1013. The district court concluded that under the circumstances the Attorney General had the authority to detain Alvarez–Mendez and to deny him parole until his deportation could be effected.

*Rodriguez–Fernandez v. Wilkinson, supra,* is inapplicable to Petitioner's case for the same reasons. Unlike Rodriguez–Fernandez, Petitioner was granted immigration parole after his arrival in the United States. While on parole, he committed numerous, severe criminal offenses for which he has apparently served sentences of incarceration. Petitioner's parole was revoked and he was detained because of the crimes he committed on parole. Also unlike Rodriguez–Fernandez, Petitioner has received an individual review concerning whether or not he should be paroled, and he will receive periodic reviews of the propriety of his detention.

The Respondent has implicit statutory authority to detain Petitioner based upon his finding that Petitioner's parole is not in the public interest. *Palma v. Verdeyen, supra* at 104; *Alvarez–Mendez v. Stock, supra* at 1012. Further, Respondent has acted within his discretion under 8 U.S.C. § 1227(a) in determining that Petitioner's immediate deportation is not practicable or proper and that Petitioner is not suitable for parole.

Additionally, the Respondent has met his burden of showing that Petitioner's detention is not simply incarceration as an alternative to departure. Petitioner's case will be reviewed annually under established procedures to determine whether Petitioner is eligible for reparole. *See Gallego v. INS,* 674 F.Supp. 280, 288 (W.D.Wisc.1987) (detention under Cuban Review Plan is not indefinite because subject to periodic review). The Attorney General has released over 3,600 Cuban detainees since December of 1987, when the current regulations governing parole review for Mariel Cubans took effect. *See* government Exhibit 1, Declaration of John A. Simon, Respondent's Answer and Memorandum. Current reports also indicate that there are approximately 2,618 Mariel Cubans being detained

under immigration laws as a result of parole revocations and denials of parole. *See id.* Thus, only a small percentage of the original number of Mariel Cubans are being detained, and the Respondent has demonstrated continuing efforts to parole those aliens found suitable for release, while continuing his efforts to repatriate those Mariel Cubans found to be excludable and not suitable for parole.

**B.** *Alleged Violations of the Fifth and Sixth Amendments*

■ Petitioner contends that he has a liberty interest in being free from indefinite detention and that his due process liberty interest is being violated by his "indefinite detention." Moreover, Petitioner contends that the Cuban Review Plan procedure, 8 C.F.R. §§ 212.12 and 212.13, "is not adversarial in nature and lacks fundamental procedural guarantees (*e.g.,* hearing by impartial decision-maker, notice of all relevant charges, allocation of burden of proof to the government, right to counsel)."

Relying on Supreme Court pronouncements in *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), and *Wong Wing v. United States,* 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140 (1896), the Tenth Circuit found in *Rodriguez–Fernandez v. Wilkinson, supra,* that an excludable alien in custody in the United States "may not be punished without being accorded the substantive and procedural due process guarantees of the Fifth Amendment." *Rodriguez–Fernandez v. Wilkinson, supra* at 1387. The court compared Rodriguez–Fernandez' detention to "incarceration pending trial or other disposition of a criminal charge" and concluded that his detention was "justifiable only as a necessary, temporary measure." *Id.* at 1387.

This Court has already found that Petitioner's case is distinguishable from *Rodriguez–Fernandez.* Petitioner committed criminal offenses while in the United States, and those offenses formed a rational basis for the Attorney General's decision to revoke Petitioner's parole and detain him pending deportation. Moreover, Petition-

er's detention is not indefinite, since Respondent has reviewed and will continue to review annually Petitioner's eligibility for parole. Petitioner's detention is therefore not "punishment" as it protects the paramount interest of the public. *See* 8 U.S.C. § 1182(d)(5)(A) (Attorney General may in his discretion temporarily parole an excludable alien into the United States "for emergent reasons or for reasons deemed strictly in the public interest ..."). Accordingly, Petitioner may not invoke Fifth Amendment protections of due process.

The Eleventh Circuit has copiously reviewed the merits of a claim to guarantees of substantive due process by Mariel Cubans in the class action cases of *Fernandez–Roque v. Smith,* 734 F.2d 576 (11th Cir.1984), and *Garcia–Mir v. Meese,* 788 F.2d 1446 (11th Cir.), *cert. denied sub nom. Ferrer–Mazorra v. Meese,* 479 U.S. 889, 107 S.Ct. 289, 93 L.Ed.2d 263 (1986). In *Fernandez–Roque v. Smith, supra,* the court found that excludable aliens had no right to parole protected by the Due Process Clause *per se. Id.* at 581–582. In *Garcia–Mir v. Meese, supra,* the Eleventh Circuit considered the question whether the Mariel Cuban aliens have a liberty interest in parole not found in the Due Process Clause itself but in rules and regulations that create a nonconstitutionally-based interest through limits on the exercise of discretionary power to grant or revoke the aliens' immigration parole. The court found that neither the INS regulations nor federal statutes create restrictions on the discretion of executive officials sufficient to support a due process entitlement to parole. *Id.* at 1453.

This Court has reviewed the relevant statute regarding immigration parole. This statute places no limits on the exercise of Respondent's discretion. Parole for an excludable alien is to be granted "temporarily under such conditions as [Respondent] may prescribe for emergent reasons or for reasons deemed strictly in the public interest ..." 8 U.S.C. § 1182(d)(5)(A). The statute also provides for the return of the parolee into custody "when the purposes of such parole shall, in the opinion of the Attorney General, have been served ..."

*Id.* The intent of this statute is to limit the grant of parole to unadmitted aliens whose release would further "the public interest." When the public interest is not furthered by parole of the alien, the Attorney General has authority to return the alien to custody. The language of this statute creates no due process interest entitling Petitioner to any particular procedures prior to the decision to revoke parole.

It is well settled that aliens have no constitutional right to admission. *Landon v. Plasencia, supra; Knauff v. Shaughnessy, supra.* There is no real distinction between immigration parole and admission of an alien. *Jean v. Nelson, supra* at 969. Because parole is merely an incident of the admissions process, the denial or revocation of parole does not effect a deprivation of a liberty interest. *Fernandez–Roque v. Smith, supra* at 582. *Accord, Perez–Perez v. Hanberry,* 781 F.2d 1477, 1481 (11th Cir.1986).

Regarding Petitioner's claim to procedural due process protections, the Tenth Circuit recognized in *Rodriguez–Fernandez v. Wilkinson, supra,* that where an alien is accused of a crime he is entitled to the constitutional protections of the Fifth and Sixth Amendments. *Id.* at 1386–1387. However, the court did not hold that these protections extend to every alien in detention pending exclusion or deportation proceedings. Rather, the court held that a detained alien may not be "punished" without being accorded substantive and due process guarantees. The court equated the "indefinite" detention of Rodriguez–Fernandez in a federal prison with punishment, where the petitioner had committed no offense against the United States and where there had been no effort by the government to repatriate the Petitioner or other Mariel Cubans. The circumstances of those Mariel Cubans now being detained in this country are strikingly different from the circumstances existing when the *Rodriguez–Fernandez* decision was entered.

Additionally, the circumstances of Petitioner's detention warrant a finding that he is not being "punished" by "indefinite" detention. Therefore, the constitutional protections of the Fifth and Sixth Amendment do not extend to Petitioner. *See Alvarez–Mendez v. Stock, supra* ("When the action of the government although appearing to touch on an alien's rights as afforded by the Sixth Amendment, clearly involves immigration matters, he or she has no basis for a constitutional challenge."). *See also INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984) (The "various protections that apply in the context of a criminal trial do not apply in a deportation hearing.").

Neither Petitioner's parole nor his detention changed his status as an excludable alien. *Garcia–Mir v. Smith,* 766 F.2d 1478, 1484 (11th Cir.1985), *cert. denied sub nom Marquez–Medina v. Meese,* 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 325 (1986). He has committed serious crimes while on parole in the United States, and his detention has been reviewed. Petitioner has received the process Congress has found he is due through the Cuban Review Plan. He has no additional entitlement to constitutional guarantees with regard to his parole or detention. *See Perez–Perez v. Hanberry, supra* at 1482 (appointment of counsel for excludable aliens challenging Attorney General's refusal to parole them unnecessary and unwarranted when Attorney General's denial of parole is supported on the face of the petition by a bona fide reason for denial, *e.g.,* prior convictions); *Fernandez–Roque v. Smith, supra* at 581–582 and n. 8 (the Due Process Clause yields the Mariel Cuban alien no liberty interest in parole revocation hearings). Additionally, Petitioner has limited due process protection in the admission/exclusion proceedings he will undergo sometime in the near future, and he may seek judicial review of the agency's decision to exclude him through a habeas corpus proceeding. 8 U.S.C. §§ 1105a(b), 1226(a), 1362; 8 C.F.R. §§ 236.1, 236.2, 236.5; *Landon v. Plasencia, supra* 459 U.S. at 26, 103 S.Ct. at 325; *Jean v. Nelson, supra.*

## C. Alleged Violation of Customary International Law

■ Finally, Petitioner contends that his continuing detention violates international

law. The Tenth Circuit recognized in *Rodriguez–Fernandez v. Wilkinson, supra,* that it is proper "to consider international law principles for notions of fairness as to propriety of holding aliens in detention." *Id.* at 1388. The court further found a fundamental international law principle in "the concept that human beings should be free from arbitrary imprisonment." *Id.* Consistent with this principle and with the statutory treatment of deportable resident aliens and with constitutional principles of due process applicable in other contexts, the court held that detention is permissible during proceedings to determine undocumented aliens' eligibility for admission and also during a reasonable period of negotiations for the aliens' repatriation. *Id.* at 1389.

The *Rodriguez–Fernandez* decision did not hold that international law creates a separate basis for release from detention. *Alvarez–Mendez v. Stock, supra* at 1013. And the court refrained from finding that the petitioner's detention violated international law. The Eleventh Circuit in *Garcia–Mir v. Meese,* 788 F.2d at 1453–1455, held that international law does not control where an executive act interdicts the application of international law. *Id.* at 1453, *quoting The Paquete Habana,* 175 U.S. 677, 700, 20 S.Ct. 290, 299, 44 L.Ed. 320 (1900) (international law controls only "where there is no treaty and no controlling executive or legislative act or judicial decision ..."). The court found evidence of such an executive act in the Attorney General's termination of the status review plan (which preceded the Cuban Review Plan) and in his decision to incarcerate excludable aliens indefinitely pending efforts to deport. *Id.* at 1454.

The Attorney General has established and implemented the Cuban Review Plan, 8 C.F.R. §§ 212.12 and 212.13 (1990), in accordance with legislation granting Respondent broad authority to implement procedures to govern the admission or exclusion of unadmitted aliens. Because sufficient grounds exist in federal law supporting the Respondent's authority and decision to detain Petitioner, the Court need not look to international law for "customary" international practices regarding the detention of excludable aliens. *Garcia–Mir v. Meese, supra.* Even assuming that the international law principle recognized in *Rodriguez–Fernandez v. Wilkinson, supra,* is applicable herein, Respondent has demonstrated that Petitioner's detention is not arbitrary. The Petitioner's detention is a necessary element of his admission/exclusion proceedings, based as it is on Petitioner's criminal record.

Accordingly, judgment will issue denying the Petitioner habeas relief and dismissing the Petition.