Ricardo Malboa PENA

v.

Richard THORNBURGH.

Civ. A. No. 4:90cv162.

United States District Court,
E.D. Texas,
Sherman Division.

July 19, 1991.

---

Ricardo Malboa Pena, pro se.

Dane Hansford Smith, Asst. U.S. Atty., Tyler, Tex., James T. Reynolds, INS Dist. Counsel, Dallas, Tex., for respondent.

## ORDER OF DISMISSAL

PAUL N. BROWN, District Judge.

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Judith K. Guthrie by Order dated August 10, 1990. The Report of the Magistrate Judge, which contains her findings of fact and recommendations for the disposition of such action, has been presented for consideration. It appearing that a copy of such Report was sent to the last known address of the Petitioner by certified mail, return receipt requested; accordingly, such proposed findings and recommendations will be considered, since no objections have been forthcoming from the Petitioner.

■■■ After careful deliberation concerning such proposed findings and recommendations, it is determined that they are correct and should be adopted by the Court.

Accordingly, it is so ORDERED. It is further

ORDERED that such matter shall be, and it is hereby, DISMISSED with prejudice. All motions not previously ruled on by either party are hereby DENIED.

## REPORT OF UNITED STATES MAGISTRATE JUDGE

JUDITH K. GUTHRIE, United States Magistrate Judge.

Petitioner Ricardo Malboa Pena, an excludable alien incarcerated in the Federal Correctional Institute at Leavenworth, Kansas, brings this petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging the legality of his detention. The case was referred pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge, dated August 10, 1990, for findings of fact, conclusions of law, and recommendations for the disposition of the case.

When the instant Petition was filed on August 6, 1990, Petitioner, an excludable alien, was detained by the Immigration and

Naturalization Service ("INS") in the Grayson County Jail in Sherman, Texas. Prior to the filing of Respondent's answer, Petitioner was convicted of an April 5, 1990 escape from the Cooke County Jail located in Gainsville, Texas. The sentencing for this escape, which is a violation of 18 U.S.C. § 751(a), was scheduled for November 29, 1990. On June 8, 1990, the INS lodged a detainer with the Deputy Marshal at Sherman, Texas.

In answer to a Show Cause Order issued by this Court on August 28, 1990, Respondent sought dismissal of this petition on grounds of mootness, alleging that at no time since Petitioner's recapture had he been in the custody of the INS. Respondent argued that at all times since recapture, Petitioner had been and would continue to be in custody of the U.S. Marshal. Respondent theorized that after sentencing Petitioner would be transferred to a Federal Correctional Institution to serve his sentence for the escape conviction and only upon completion of that sentence would he return to INS custody.

In a subsequent pleading of May 30, 1991, Respondent, having been informed of Petitioner's imminent release from the twelve month sentence imposed on the escape conviction, filed its memorandum opposing Petitioner's habeas corpus Petition on the merits.

## FACTS OF THE CASE

Petitioner is one of several thousand Cuban refugees who came into the United States during the 1980 Cuban boatlift, which originated from the Cuban port of Mariel. The refugees are generally referred to as "Mariel Cubans." Petitioner was paroled from INS custody shortly after his arrival, but his immigration parole was subsequently revoked, in response to his criminal activities.

## PETITIONER'S CONTENTIONS

The Petition is a well-drafted generic form with blanks for the name of a petitioner and a particular United States District Court. It is accompanied by a form affidavit containing multiple averments and three specific allegations: Petitioner's immigration number, the date his immigration parole was revoked, and the number of hearings afforded since revocation.

After alleging jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 2241 (habeas corpus), Petitioner presents three "Counts" against Respondent as the official responsible for establishing policy and overseeing the operations of the INS and the Bureau of Prisons.

In Count I, Petitioner concedes that 8 U.S.C. §§ 1255 and 1256 authorize temporary detention of aliens pending a decision on their admissibility or excludability but argues that because 8 U.S.C. § 1227 and regulations at 8 C.F.R. 237.5 provide for exclusion promptly after a decision to exclude, "respondent has no authority to continue to detain excludable aliens following a reasonable time to effect exclusion." He argues that temporary detention is permitted once an exclusion decision is made, but there is no authority to continue to detain an excludable alien after the expiration of a reasonable time to effect his exclusion, that is, physical removal of the detainee from the territory, jurisdiction and custody of the United States.

In Count II, Petitioner alleges he has a liberty interest in freedom from detention arising from the following sources:

1. Petitioner's unextinguished right to bodily freedom;
2. Promises extended to the Mariel Cubans, including President Carter's statements that the Cubans were welcomed with "open hearts and open arms;"
3. Respondent's policy of paroling Mariel Cubans into this country despite their excludable status;
4. International law guarantees of freedom from restraint;
5. Claims of political asylum; and
6. Other sources of an interest in freedom from restraint.

He argues that his liberty interest has been violated by the revocation and denials of immigration parole status without due process of law.

In Count III, Petitioner contends that international law, which forbids unreasonable confinement, is part of the law of the United States. Petitioner argues that his confinement is unreasonable within the meaning of international law because:

1. Its duration is without an articulated limit;
2. The conditions of confinement are usually in BOP maximum security institutions, often under 24-hour lockdown; and
3. Procedural protections are lacking.

The relief prayed for is an issuance of a writ of habeas corpus or, in the alternative, an injunction enjoining Respondent from continuing to detain Petitioner.

## STANDARD OF REVIEW

"The world is not entitled to enter the United States as a matter of right.... excludable aliens are those who seek admission into the United States but have not achieved entry." *Perez–Perez v. Hanberry*, 781 F.2d 1477, 1479 (11th Cir.1986). The rights of these people are limited to whatever statutory rights and privileges they are granted by Congress. *Jean v. Nelson*, 727 F.2d 957, 968 (11th Cir.1984) (en banc), *aff'd*, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). The authority to determine the contours of the rights of excludable aliens is vested in the political branches of the government, not the courts. *Garcia–Mir v. Smith*, 766 F.2d 1478, 1484 (11th Cir.1985), *cert. denied*, 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 325 (1986). A parole decision by the INS is "subject to review only on a deferential abuse of discretion standard." *Jean v. Nelson*, 472 U.S. at 853, 105 S.Ct. at 2996. The Court may not grant a petition for writ of habeas corpus absent an abuse of discretion under the applicable statutes and guidelines.

## ANALYSIS

■ The Court will address Petitioner's points as presented. The Court will first consider the statutory, non-constitutional arguments presented to support his claims. His major contention is that when an exclusion order has been entered by an Immigration Judge there is no congressional authorization for continued detention after the expiration of a reasonable time to effect exclusion.

After reviewing the facts and the law, the Court is of the opinion that neither Petitioner's current detainer nor his prospective detention violate any statute enacted by the United States.

Approximately fifteen months have elapsed since Petitioner's immigration parole was revoked on April 1, 1990, the date of his release from a Florida state prison where he had served an eight year sentence for robbery with a pistol and aggravated assault with a pistol. The statute providing for parole of excludable aliens is 8 U.S.C. § 1182(d)(5)(A), which reads as follows:

> The Attorney General may except as provided in subparagraph (B), in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of such alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

Judicial review of a decision by the Attorney General to grant or deny parole under this statute is limited to a review of whether he has advanced a "bona fide and facially legitimate reason" for his decision. *Garcia–Mir v. Smith*, 766 F.2d at 1485.

Congress has promulgated specific regulations regarding parole decisions for Mariel Cubans. These regulations are codified in the Mariel Cuban parole determination plan at 8 C.F.R. 212.12 and 212.13. Under this plan, the Associate Commissioner for Enforcement may, in the exercise of discretion, grant parole to a detained Mariel Cu-

ban for emergent reasons or for reasons deemed strictly in the public interest. 8 C.F.R. 212.12(b)(1). A Cuban Review Panel, provided by 212.12(d)(1), analyzes the detainee's situation and develops parole recommendations for the Associate Commissioner's consideration. Before making a recommendation that the detainee receive parole, a majority of the Cuban Review Panel must conclude that:

1. The detainee is presently a non-violent person;
2. The detainee is likely to remain non-violent;
3. The detainee is not likely to pose a threat to the community following his release; and
4. The detainee is not likely to violate the terms of his parole.

8 C.F.R. 212.12(d)(2).

The factors to be considered in making this determination include: disciplinary reports or infractions while in custody; past history of criminal behavior; institutional progress in work, education, or vocational programs; ties to the United States; the likelihood of absconding; and any other information which is probative of whether the detainee is likely to adjust to life in the community. When parole is denied, a subsequent review is to be commenced within one year of this denial unless the INS Director specifies a shorter time period. 8 C.F.R. 212.12(g)(2).

Turning now to the instant case, attached to Respondent's most recent pleading are sixteen exhibits which include Petitioner's INS records, a lengthy NCIC report of charges and convictions (Gov. # 5), judgments of criminal convictions (Gov.Ex. 6, 16), and a disciplinary report of the Florida Department of correction (Gov.Ex. 14). Respondent has also included the following "statement of facts" summarizing the course of Petitioner's various INS hearings and his criminal history. Should Petitioner dispute the accuracy of this recitation, he may do so by timely objection to this Report.

The Petitioner is a thirty-two year old male, native and citizen of Cuba, who arrived on the shores of the United States on June 5, 1980 at Key West, Florida as part of the Mariel Boatlift. On June 14, 1980, the Respondent INS issued Form I–122 Notice to Applicant Detained for Hearing before Immigration Judge. Exhibit 4. The Notice charged excludability under §§ 212(a)(9) [8 U.S.C. § 1182(a)(9)] as an alien who has been convicted of a crime involving moral turpitude, and 212(a)(20) [8 U.S.C. § 1182(a)(20)] as an intending immigrant without a valid immigrant visa or other entry document. Previously, the Petitioner had been convicted of refusing to enter the military in Cuba in 1977 and sentenced to 16 months imprisonment. Also in 1979, the Petitioner was convicted of robbery in Cuba and was sentenced to 12 years imprisonment. While serving this sentence, the Petitioner was released by his Cuban jailers to come to the United States.

After completing INS processing, the Petitioner was paroled to the custody of a sponsor in Miami, Florida. Shortly thereafter the Petitioner began an extensive course of criminal misconduct.

On October 12, 1981, the Petitioner was arrested for theft in Florida but the charge was dismissed. On June 22, 1982 he was convicted of trespass after warning and given credit for time served. On July 26, 1982, the Petitioner was arrested for burglary, reckless driving, leaving the scene of an accident, no valid driver's license, and use of a motor vehicle in the commission of a felony. However, no disposition is available on these charges. On May 8, 1983 the Petitioner was arrested for attempting to elude a police officer, however, no disposition is shown. FBI Rap Sheet attached as Exhibit 5. On November 22, 1983, the Petitioner was convicted in Dade County Florida of robbery with a pistol and aggravated assault with a pistol and was sentenced to eight years on each count to run concurrently. Exhibit 6.

Previously the Petitioner had appeared before an Immigration Judge and had applied for political asylum. Form I–589 attached as Exhibit 7. On June 27, 1982, the Bureau of Human Rights and Hu-

manitarian Affairs of the Department of State issued on advisory opinion that the Petitioner had not established a claim for asylum based upon the Petitioner's commission of a serious nonpolitical crime in Cuba. Exhibit 8. On October 8, 1980 the asylum application was denied and the Petitioner was ordered excluded and deported from the United States. Exhibit 9. The Petitioner appealed to the Board of Immigration Appeals (Exhibit 10), who dismissed the appeal by written decision dated February 11, 1982. Exhibit 11. The Petitioner's parole was subsequently revoked and he was placed in INS custody upon his release from prison on April 1, 1990. Exhibits 12 and 13. While in prison, the Petitioner has been involved in forty-two disciplinary reports ranging from disobeying orders to possession of weapons and narcotics. Exhibit 14. On March 20, 1990 a mental health evaluation was conducted by the U.S. Public Health Service who concluded the Petitioner's release may pose a danger to the public. On May 14, 1990, the Respondent INS, through the Associate Commissioner for Enforcement denied the Petitioner's request for re-parole, citing his criminal record and the conclusion that it was not clearly evident that the Petitioner would be unlikely to violate the conditions of his parole if he was to be released. The Petitioner was advised that he would receive annual parole reconsideration. Exhibit 16. However, approximately five weeks earlier the Petitioner escaped from the Cooke County Jail in Gainsville, Texas. He was shortly thereafter recaptured, tried and convicted on November 29, 1990 and was sentenced to an additional twelve months imprisonment. (Exhibit 15).

Petitioner has failed to show that the Respondent did not set forth a bona fide and facially legitimate reason for denial of parole. Furthermore, Petitioner has not shown an abuse of discretion in the application of the regulations governing parole decisions concerning Mariel Cubans. Releasing only those detainees who meet the statutory criteria is clearly within the broad discretion given to the Attorney General in immigration parole matters. *See Garcia–Mir v. Smith*, 766 F.2d at 1485.

Petitioner's criminal history and disciplinary record in prison provides evidence to support the determination that he fails to meet one or more criteria set out in 8 C.F.R. 212.12(d)(2), namely that he is likely to violate the conditions of parole. *See Palma v. Verdeyen*, 676 F.2d 100, 105 (4th Cir.1982).

As noted above, Petitioner's immigration parole was revoked on April 1, 1990. In a May 14, 1990 Final Notice of Parole Denial the Associate Commissioner denied parole because he was unable to conclude that Petitioner's release on parole would be in the public interest. The reason provided for the decision was that in view of Petitioner's conviction of robbery with a pistol and the nature of his criminal background, it was not clearly evident that he was unlikely to violate the conditions of parole following release. Gov.Ex. 15.

Petitioner's contention that the INS lacks power to detain him indefinitely has no merit. Indefinite detention of an excludable alien has been upheld by the Supreme Court where an alien was deemed a security risk and no other country would accept him. *Shaughnessy v. United States ex rel Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953). Additionally, while Congress has provided in 8 U.S.C. § 1252(c) that an alien subject to deportation, as distinguished from exclusion, shall be deported within six months and may be detained for that length of time only, there is no such time period in the statutory provisions concerning excludable aliens. *See Palma v. Verdeyen*, 676 F.2d at 103–04. ("Indefinite detention of a permanently excluded alien deemed to be a security risk who is refused entry to other countries, is not unlawful.")

Petitioner relies on *Rodriguez–Fernandez v. Wilkinson*, 654 F.2d 1382 (10th Cir. 1981), as authority for his statement that indefinite detention is improper. The Respondent argues in turn that *Wilkinson* was incorrectly decided. The correctness of *Wilkinson* is not a matter for this Court to address, however, because as a decision from the Tenth Circuit, *Wilkinson* is not

binding authority on this Court. *See* 28 U.S.C. § 41. Further, *Wilkinson* may be distinguished on two grounds. First, it involved a Petitioner who had never been convicted of any crime in the United States and thus it differs from the instant case, which involves a Petitioner who has a criminal conviction while in this country. Second, the annual review hereinafter discussed had not been implemented when *Wilkinson* was decided.

Another valid theory under which Petitioner's detention may be justified has been recognized in *Alvarez–Mendez v. Stock,* 746 F.Supp. 1006 (C.D.Cal.1990) and *Gallego v. INS,* 674 F.Supp. 280 (W.D.Wis.1987). Briefly stated, since legislation adopted in 1987 requires an annual review of each Mariel Cuban in custody, detention is transformed from indefinite to "temporary." That is, the Mariels are detained only from hearing to hearing, not until such indefinite time as the Cuban government may agree to allow them to be returned to Cuba. *See* 8 C.F.R. 212.12(g)(2).

■ With respect to Petitioner's arguments that his release is mandated because of constitutional liberty interests, the Court is again of the opinion there is no merit to his claims and relief should be denied.

Petitioner can show no entitlement or liberty interest based on President Carter's "open hearts and open arms" statement. There is no authority for the proposition that the President, through a simple oral statement, can create an actionable interest. This precise contention was considered and rejected in *Garcia–Mir v. Meese,* 788 F.2d 1446, 1451 (11th Cir.1986), *cert. denied,* 479 U.S. 889, 107 S.Ct. 289, 93 L.Ed.2d 263 (1986).

Petitioner's contention that he has a liberty interest in freedom from preventive detention without a full adversarial hearing under *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), is also without merit. *Salerno* involved a case under the Bail Reform Act rather than any immigration statute. There is simply no requirement for a full adversarial hearing under the Immigration and Nationality Act or under the specific statutes and regulations applicable to Mariel Cubans.

Petitioner contends that his prolonged detention is in violation of the Fifth Amendment in that he is being denied due process. He concedes that he is not entitled to Fifth Amendment protection regarding his application for admission to this country, but states that immigration parole presents a different claim, to-wit, protection from being punished and imprisoned without cause.

The distinction between admission into the United States and immigration parole has been considered by other courts. The decision to parole or detain an excludable alien was held by the Eleventh Circuit to be an "integral part of the parole process." *Jean v. Nelson,* 727 F.2d at 963. The Eleventh Circuit relied on *Mezei, supra,* for this conclusion. The issue in *Mezei,* as stated by Justice Clark, was "whether the Attorney General's continued exclusion of respondent without a hearing amounts to an unlawful detention, so that the courts may admit him temporarily to the United States on bond until arrangements are made for his departure abroad." 345 U.S. at 207, 73 S.Ct. at 626. Thus, petitioner's argument that *Mezei* deals only with admissions and not with detention, an argument also advanced by the Petitioners in *Jean,* is without merit. *See also Fernandez–Roque v. Smith,* 734 F.2d 576, 581–82 (11th Cir.1984) (Same argument was advanced and rejected. Excludable aliens cannot challenge the admissions process or parole decisions under a claim of right under the U.S. Constitution.)

Petitioner also contends that his continued detention constitutes "punishment" without trial or due process, citing *Wilkinson,* 654 F.2d at 1387. He states that he fully served his criminal sentence but is still being imprisoned for that crime. This is incorrect. Detention pending deportation is not punitive but rather administrative in nature. *See Carlson v. Landon,* 342 U.S. 524, 537–38, 72 S.Ct. 525, 532–33, 96 L.Ed. 547 (1952), *reh'g denied,* 343 U.S. 988, 72 S.Ct. 1069, 96 L.Ed. 1375. Such detention is clearly contemplated by Con-

gress as a necessary incident to deportation and exclusion, as shown by the statutes and regulations that Congress has passed. *See* 8 U.S.C. § 1227(a); 8 U.S.C. § 1252(c); and 8 C.F.R. 212.12, all of which involve the use of detention, where necessary, not to punish but to effectuate the statutory immigration scheme that Congress intends.

Petitioner further complains that he did not receive due process in the revocation of his parole, asserting that he did not receive a prior hearing or the right to notice of charges, an opportunity for cross-examination, an opportunity to call witnesses, an allocation of the burden of proof to the government, the right to an impartial decision-maker, and "other guarantees of due process."

Petitioner has, however, received all procedural protections due to him. There is no right to a hearing at the time of the revocation of immigration parole. *Ahrens v. Rojas*, 292 F.2d 406 (5th Cir.1961). Further, Congress has authorized a statutory scheme to handle the Mariel Cubans' parole, and this plan provides the due process to which Petitioner is entitled. "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Palma v. Verdeyen*, 676 F.2d at 103 (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544, 70 S.Ct. 309, 313, 94 L.Ed. 317 (1950)). *See also Garcia–Mir v. Meese*, 788 F.2d at 1453. This plan provides for a personal interview if a detainee is not recommended for parole. 8 C.F.R. 212.12(d)(4)(ii). The detainee may be accompanied by a person of his choice at the interview and may submit to the hearing panel any information, either orally or in writing, which he believes provides a basis for his release on parole. Petitioner's contention that the plan set out by Congress denies him due process is without merit.

Petitioner's complaint about denial of due process through incarceration without a hearing is without merit. Because he has no right to a hearing, *Ahrens v. Rojas*, 292 F.2d at 408, he is entitled to only the process which Congress has provided to him. The process includes a scheduled review of each case in which parole is revoked. 8 C.F.R. 212.12(g)(1).

■ Petitioner next complains of violations of his rights under the Sixth Amendment. This argument is meritless. While any alien clearly does have rights under the Sixth Amendment,[1] the protections of the Amendment are specifically limited to criminal prosecutions. *Hannah v. Larche*, 363 U.S. 420, 440, 80 S.Ct. 1502, 1513 n. 16, 4 L.Ed.2d 1307 (1960). Petitioner's detention, as noted above, is an administrative, not a criminal, proceeding. Thus, the Sixth Amendment does not apply. *Cf. Lai To Hong v. Ebey*, 25 F.2d 714 (7th Cir.1928) (Sixth Amendment is not applicable in a deportation proceeding).

■ Finally, Petitioner complains in his third and last Count that his continued detention violates international law. In this connection, he does not point to any specific treaties or obligations of the United States, but merely contends that "customary international law" prohibits prolonged detention.

The public law of nations is incorporated into the common law of the United States. *The Paquete Habana*, 175 U.S. 677, 20 S.Ct. 290, 44 L.Ed. 320 (1900). However, public international law is controlling only when there is no treaty and no controlling executive or legislative act or judicial decision. *Id.* at 700, 20 S.Ct. at 299. Congress, in enacting statutes, is not bound by international law. *United States v. Merkt*, 794 F.2d 950, 964 n. 16 (5th Cir.1986), *cert. denied*, 480 U.S. 946, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987); *United States v. Pinto–Mejia*, 720 F.2d 248, 259 (2nd Cir.1983), *reh'g denied*, 728 F.2d 142. Because Congress has clearly enacted statutes which control the present situation, the applica-

---

**1.** *See, e.g., Wong Wing v. United States*, 163 U.S. 228, 238, 16 S.Ct. 977, 981, 41 L.Ed. 140 (1896) (Aliens are entitled to grand jury indictments); *United States v. Henry*, 604 F.2d 908, 914 (5th Cir.1979) (An excludable alien is entitled to *Mi-* *randa* warnings); *United States v. Gavilan*, 761 F.2d 226 (5th Cir.1985) (An excludable alien is entitled to effective counsel in a criminal proceeding).

tion of international law has been preempted. Thus, Petitioner's contention that his detention violates international law provides him with no grounds for relief. *See Garcia–Mir v. Meese*, 788 F.2d at 1453.

The Court has carefully examined Petitioner's grounds for habeas corpus relief and finds that he has failed to prove the existence of any valid grounds for such relief. His petition is without merit.

### RECOMMENDATION

It is therefore recommended that the petition for a writ of habeas corpus be denied and that Respondent's request for dismissal be granted.

Failure to file written objections to the proposed findings and recommendations contained in the Report within ten (10) days shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988).