Roberto Molina **RODRIGUEZ,** Petitioner,

v.

Richard **THORNBURGH,** Attorney General, Respondent.

No. 90–3319–RDR.

United States District Court, D. Kansas.

Sept. 30, 1993.

Roberto Molina Rodriguez, pro se.

Jackie A. Rapstine, Office of U.S. Atty., Topeka, KS, for respondent.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This matter is before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241. Petitioner is an excludable alien and a Cuban national who arrived in this country during the Mariel boatlift. He is currently housed at the United States Penitentiary, Leavenworth, Kansas.[1] Petitioner commenced this matter in August 1990 by filing a form petition in which he asserts (1) the Attorney General lacks the statutory authority to detain him indefinitely; (2) his immigration parole was revoked and his reparole has been denied without due process of law; and (3) his continued detention violates customary international law.

*Factual Background*

In 1980, some 125,000 undocumented Cuban citizens arrived in the United States from the port of Mariel, Cuba. Approximately 25,000 of these so-called "Mariel Cubans" acknowledged prior criminal records in Cuba or their release from Cuban prisons or mental facilities for passage to the United States. Arriving Mariel Cubans were reviewed by United States officials, and the majority were released on immigration parole pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5).

In 1984, the United States and Cuba entered a migration agreement under which Cuba agreed to repatriate 2,746 named Mariel Cubans.[2] However, following the repatriation of approximately 200 Cubans, Cuba suspended the agreement in May 1985. In 1987, Cuba and the United States agreed to reinstate the agreement, a decision that resulted in riots by Cuban detainees ending in considerable destruction to federal facilities in Atlanta, Georgia, and Oakdale, Louisiana. Following the riots, new immigration parole and repatriation review programs were developed by the Attorney General.

Petitioner arrived in this country in May 1980 and was released on parole to his sister in California in June 1980.

In 1982, petitioner was convicted in a California court on his guilty pleas to rape and sodomy charges. He was sentenced to eight years in prison and served approximately four years and seven months.

In 1986 petitioner was notified of the revocation of his immigration parole. He entered the United States Penitentiary, Atlanta, Georgia, in November 1986, as an INS detainee. During petitioner's detention in Atlanta, exclusion proceedings were conducted and he was found excludable. No appeal was filed from this determination.

In November 1989, petitioner's parole was denied due to petitioner's criminal history, misconduct during incarceration, and due to the review panel's finding that petitioner was not credible during the proceedings. Release was again denied in March 1990, due to the nature and extent of petitioner's criminal history and to the potential for suicidal behavior.

---

1. As an excludable alien, petitioner is considered held at the United States border, never having been granted admission.

2. This list of named individuals represented those Cuban aliens identified by the Immigration and Naturalization Service as warranting special efforts to effect their departure due to their serious criminal behavior or serious mental illness.

*Discussion*

■ The admission or exclusion of aliens is an act of sovereignty, and Congressional authority to establish procedures governing the power to admit or exclude inheres in the executive power to control foreign affairs. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542, 70 S.Ct. 309, 312, 94 L.Ed. 317 (1950).

Congress has delegated broad authority to the Attorney General to regulate and establish policy for the admission or exclusion of aliens. *Kleindienst v. Mandel*, 408 U.S. 753, 766–770, 92 S.Ct. 2576, 2583–86, 33 L.Ed.2d 683 (1972); 8 U.S.C. § 1103(a). Pursuant to this authority, the Attorney General has established regulations specific to parole decisions for Mariel Cubans; these regulations appear at 8 C.F.R. §§ 212.12 and 212.13. This regulatory plan permits the Associate Commissioner for Enforcement to grant parole "for emergent reasons or for reasons deemed strictly in the public interest." 8 C.F.R. § 212(b)(1). Before reaching a decision that a Mariel Cuban is suitable for parole, the reviewing body must conclude the detainee is presently non-violent and likely to remain so, the detainee will not pose a threat to the community, and the detainee is unlikely to violate the conditions of parole. 8 C.F.R. § 212.12(d)(2).

Judicial review of decisions regarding the detention or release of excludable aliens is deferential. The habeas court reviews only to evaluate whether the INS "has articulated *some* individualized facially legitimate and bona fide reason for denying parole, and *some* factual basis for that decision in each individual case." *Marczak v. Greene*, 971 F.2d 510, 518 (10th Cir.1992) (emphasis in original). The court now turns to the issues raised by petitioner.

**Statutory Authority of the Attorney General**

■ Petitioner contends the Attorney General does not have the statutory authority to detain him indefinitely. In support of his claim, petitioner cites *Rodriguez–Fernandez v. Wilkinson*, 654 F.2d 1382 (10th Cir. 1981). In that case, the United States Court of Appeals for the Tenth Circuit affirmed the grant of a writ of habeas corpus and found that in the case of an excludable alien who could not be returned to Cuba, physical detention should be the exception.

A review of the *Rodriguez–Fernandez* decision persuades the court petitioner's circumstances are distinguishable from the alien in that action. First, petitioner was released on parole after an initial screening, while Rodriguez–Fernandez was held pending an exclusion hearing. Next, Rodriguez–Fernandez had committed no crimes in this country, while petitioner committed crimes in California which resulted in his incarceration there. Finally, under current regulations, petitioner is entitled to a periodic, individualized review by immigration authorities to consider his suitability for parole. Thus, the prospect of parole for petitioner remains viable and is not simply an alternative to departure. *Compare Rodriguez–Fernandez*, 654 F.2d at 1386, 1390 (affirming grant of habeas corpus and concluding alien's detention was only an "alternative to exclusion").

Nor does the court believe a review of the INA affords petitioner relief. The INA clearly confers on the Attorney General the broad authority to enforce the provisions of the Act, a power that necessarily includes the power to release or detain excludable aliens. *See* 8 U.S.C. §§ 1103(a) and 1182(d)(5). The INA contemplates that the detention of an excludable alien will be brief, preceding a prompt deportation. 8 U.S.C. § 1227(a). However, where such immediate deportation "is not practicable or proper," the statute contemplates detention and does not appear to restrict the authority to detain. Rather, the portion of the INA which directly addresses parole of an inadmissible alien permits such release "for emergent reasons or for reasons deemed strictly in the public interest." 8 U.S.C. § 1182(d)(5)(A).

The court also notes the finding of the United States District Court for the Western District of Oklahoma that the legislative history of the INA supports a conclusion that extended detention was contemplated by the Congress. In *Barrios v. Thornburgh, supra*, that court stated:

The legislative history of the Immigration and Naturalization Act demonstrates that

parole of an unadmitted alien was meant to be the exception rather than the rule. *Amanulah v. Nelson,* 811 F.2d 1, 6 (1st Cir.1987). *See* S.Rep. No. 748, 89th Cong., 1st Sess., reprinted in 1965 U.S.Code Cong. & Admin.News 3328, 3335: "... The parole provisions were designed to authorize the Attorney General to act only in emergent, individual, and isolated situations, such as the case of an alien who requires immediate medical attention, and not for the immigration of classes or groups outside of the limits of the law." 754 F.Supp. at 1539.

Having reviewed the relevant portions of the INA, the court concludes the statute does not limit the respondent's authority to detain excludable aliens who are unable to return to their native country or to enter another country. The court further concludes the petitioner's circumstances are readily distinguishable from those shaping the decision of the United States Court of Appeals for the Tenth Circuit in *Rodriguez–Fernandez v. Wilkinson, supra,* and finds that decision is therefore compatible with this court's conclusion that the current statutory scheme and the regulations that require periodic review of detained Mariel Cubans do not bar detention of those detainees who have not been found suitable for release.

This view also finds support in case law. Courts considering the argument by Mariel detainees that the INA does not authorize the indefinite detention of excludable aliens have uniformly resolved this question against the petitioners. *See, e.g., Gisbert v. U.S. Attorney General,* 988 F.2d 1437, 1447 (INA authorizes detention of petitioners until United States can deport them) (5th Cir.1993); *Barrios v. Thornburgh,* 754 F.Supp. 1536, 1539 (W.D.Okl.1990) (noting the legislative history of the INA); *Alvarez–Mendez v. Stock,* 746 F.Supp. 1006 (C.D.Cal.1990) (Attorney General has power to detain excludable aliens not suitable for parole); *Sanchez v. Kindt,* 752 F.Supp. 1419 (S.D.Ind.1990) (continued detention of an excludable alien did not violate INA; Attorney General has authority to detain alien indefinitely where deportation is not practicable).

**Constitutionality of Continued Detention**

Petitioner next argues his continued detention violates his rights under the Fifth and Sixth Amendments and constitutes an impermissible, excessive punishment. He also alleges the review procedures for Mariel Cubans set forth in federal regulations are not adversarial in nature and thus lack procedural guarantees, resulting in arbitrary detention.

■ These arguments are unpersuasive. It is settled that an alien seeking admission into the United States has no rights regarding his admission, but enjoys only those rights that Congress extends. *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982); *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. at 544, 70 S.Ct. at 313 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") *See also Pena v. Thornburgh,* 770 F.Supp. 1153, 1160 (E.D.Tex.1991) (Mariel Cuban detainee "entitled to only the due process which Congress has provided to him"). This court finds no basis for petitioner's assertion he enjoys a liberty interest in freedom from detention secured by the Due Process Clause of the Fifth Amendment.

Similarly, the court rejects the claim that the parole review procedures are constitutionally inadequate. The federal regulations define the procedures for parole evaluations to which Mariel Cubans are entitled, and petitioner does not assert these procedures were not followed.

■ Petitioner's claims of a Sixth Amendment violation and of impermissible punishment likewise fail. The courts considering this claim by Mariel detainees have universally concluded that the Sixth Amendment is inapplicable in this context "because immigration proceedings and detention do not constitute criminal proceedings or punishment." *Ramos v. Thornburgh,* 761 F.Supp. 1258, 1260 (W.D.La.1991) (citing *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1989)). *Accord, In re Mariel Cuban Habeas Corpus Petitions,* 822 F.Supp. 192, 196 (M.D.Pa.1993); *Barrios v. Thornburgh,* 754 F.Supp. 1536,

1542 (W.D.Okl.1990); *Sanchez v. Kindt,* 752 F.Supp. 1419, 1430–31 (S.D.Ind.1990).

### International Law Claim

 Petitioner's final assertion is that his detention violates customary international law. While public international law is part of the common law of the United States, it is settled that international law controls only "where there is no treaty and no controlling executive or legislative act or judicial decision...." *Garcia–Mir v. Meese,* 788 F.2d 1446, 1453 (11th Cir.), *cert. denied,* 479 U.S. 889, 107 S.Ct. 289, 93 L.Ed.2d 263 (1986) (quoting *The Paquete Habana,* 175 U.S. 677, 700, 20 S.Ct. 290, 299, 44 L.Ed. 320 (1900)).

In the case of detained Mariel Cubans, there is no lack of controlling domestic authority. There is domestic statutory and regulatory authority and a body of case law addressing the claims of this group of excludable aliens. The court finds ample authority for the detention of Mariel Cubans and concludes reference to international law is not appropriate.

In sum, the court concludes the petitioner's continued detention by immigration authorities does not exceed the respondent's authority or otherwise violate the Constitution. The court finds this detention is governed by domestic authority and that resort to international law is unnecessary and improper in this matter.

IT IS THEREFORE ORDERED the petition for habeas corpus is denied.