**In re Mariel CUBAN Habeas Corpus Petitions.**

**No. 3:MI–90–398.**

United States District Court,
M.D. Pennsylvania.

May 7, 1993.

Before CALDWELL, KOSIK and McCLURE, JJ.

### MEMORANDUM AND ORDER

#### Procedural Background

This action initiated on December 18, 1990, when thirty-seven (37) individual habeas corpus petitions filed by Mariel Cubans detained at the United States Penitentiary, Lewisburg, Pennsylvania (USP–Lewisburg) were consolidated into a class action. The consolidation order also directed that the case be assigned to a three judge panel and counsel be appointed to represent the interests of the petitioners.

Following the initial consolidation, additional habeas petitions filed by USP–Lewisburg Mariel detainees were likewise joined. The claims of twenty-two (22) class members were subsequently dismissed by the court for a variety of reasons, including death, repatriation to Cuba, and their parole from INS custody of the Immigration and Naturalization Service (hereinafter INS).

Still pending before the court are the claims of nineteen (19)[1] petitioners. By order dated April 23, 1992 the court granted the respondent's unopposed motion that the class be decertified and proceed as a consolidated individual non-class action. Although many of the remaining petitioners are no longer incarcerated within the confines of the Middle District of Pennsylvania[2], this court still retains jurisdiction over their claims. *Goodman v. Keohane,* 663 F.2d 1044, 1047 (11th Cir.1981).

A review of both petitioners' initial form petition and the supplemental brief filed by their appointed counsel provides that the petitioners are asserting that their:

1. Present incarceration is punishment in violation of the Fifth and Sixth Amendments.

2. Immigration parole was revoked and their reparole was denied without due process of law.

3. Inordinate and prolonged detention is not authorized by Congress.

4. Ongoing detention violates controlling international law.

### Factual Background

During the Spring of 1980, approximately one hundred and twenty-five thousand (125,000) Cuban citizens entered this country from Mariel, Cuba in what is now commonly referred to as the "Freedom Flotilla." These so called "Mariel Cubans" sought entry into the country as refugees and as such were placed into the custody of the INS pending a decision on their refugee status.

In the instant case, petitioners were all granted administrative parole following their arrival in this country. Their parole allowed them to remain in the United States pending a determination by the INS as to whether they should be excluded. However, all of the instant petitioners subsequently committed various, individual crimes while on parole and were thereafter incarcerated in state and federal correctional facilities throughout the country. Following service of their respective prison terms, petitioners were placed in administrative detention by the INS at federal correctional facilities.

As a result of negotiations between the United States and Cuba, an agreement was reached in 1984 whereby Cuba, in an effort to normalize immigration relations between the two countries, agreed to accept 2,746 Mariel Cubans who had been identified as having serious criminal backgrounds or suffering from mental illness. Cuba unilaterally suspended the plan in 1985. However, the repatriation agreement was reinstated in November, 1987. Following reinstatement of the agreement, a total of 942 Mariel Cubans have been repatriated. In the instant case it is unknown whether any of the remaining petitioners are on the repatriation list. However respondent notes that this court may assume that none of the remaining petition-

---

1. According to information provided by respondent, the remaining petitioners and their present place of incarceration are as follows:

| | | |
|---|---|---|
| 1. | Pedro Over–Vega | —USP–Leavenworth |
| 2. | Omar Alfonso Caseres | —USP–Leavenworth |
| 3. | Elipidio Rojas–Gonzalez | —USP–Leavenworth |
| 4. | Elidio Almaquer | —USP–Lewisburg |
| 5. | Daniel Artola–Cordero | —USP–Lewisburg |
| 6. | Guillermo Verrier–Beato | —FCI–Phoenix |
| 7. | Daniel Jarris | —USP–Leavenworth |
| 8. | Juan Perez–Lopez | —FCI–Lompoc |
| 9. | Carlos Martinez–Alfonso | —USP–Lewisburg |
| 10. | Pablo Aulet–Sanchez | —USP–Lewisburg |
| 11. | Reymund Charles Alfonso Parra | —FCI–Lompoc |
| 12. | Angel Sanabria–Casares | —FCI–Oxford |
| 13. | Aldo Valera–Bernaveu | —FCI–Phoenix |
| 14. | Gregorio Carrillo Bejerano | —Englewood, Colorado Drug Abuse Center |
| 15. | Orlando Linares–Policl | —FCI–Lompoc |
| 16. | Ramon Herrera–Cola | —USP–Leavenworth |
| 17. | Juan Rodriguez | —USP–Lewisburg |
| 18. | Roberto Hernandez | —USP–Lewisburg |
| 19. | Carlos Martinez–Ros | —USP–Lewisburg |

2. Only seven (7) petitioners remain confined at USP–Lewisburg.

ers are named in the repatriation agreement.[3]

The instant petitioners have all been classified as excludable aliens. Under applicable immigration laws, an excludable alien may be paroled into this country but can still be subjected to subsequent exclusion proceedings.

Federal regulations entitled the Cuban Review Plan were enacted in 1987 regarding parole determinations and revocations of Mariel Cuban detainees. *See* 8 C.F.R. Section 212.12 (1992). These regulations are applicable to each of the instant petitioners, as well as any Mariel Cuban presently being detained by the INS. The plan provides that in order for a Mariel Cuban to be granted parole, a review panel must conclude that the detainee is: (1) presently a non-violent person; (2) likely to remain non-violent; (3) not likely to pose a threat to the community following his release; and, (4) not likely to violate the conditions of his parole. *Id.* at (D)(2).

Additional factors to be considered include a detainees mental health condition; past history of criminal behavior; institutional progress; disciplinary infractions while in custody; likelihood to abscond, ties to the United States; and any other probative information. *Id.* at (D)(3). If a detainee is not recommended for parole he will be provided with a personal interview before the panel. During this interview, a detainee may be accompanied by a person of his choosing and can submit information favorable to his case either orally or in writing.

Furthermore, the regulations mandate that any Mariel Cuban detainee subject to continued detention would receive a yearly review for the purpose of reconsidering his eligibility for immigration parole. *Id.* at (G)(2).

## DISCUSSION

■ This Circuit in *Moret v. Karn,* 746 F.2d 989 (3d Cir.1984), recognized that the Attorney General has broad discretion to grant or deny parole. The Third Circuit also indicated that the INS, in terminating an excludable alien's parole, had to abide by any procedural protections mandated by its own regulations or directives. Furthermore, in reviewing parole related decisions of the INS, the standard of review for a district court was limited to whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* at 991.

In support of their claims, petitioners rely primarily on *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382 (10th Cir.1981). The court initially notes that as a decision of the Tenth Circuit, *Wilkinson* is not binding in this court. *See* 28 U.S.C. § 41. Furthermore, the *Wilkinson* decision was rendered prior to the implementation of the Cuban Review Plan and it involved a petitioner who had never been convicted of a crime in this country. The court will address the specific claims raised by the petitioners *seriatim* below.

### Fifth Amendment

The form habeas petition initially submitted by each petitioner asserts that their prolonged detention violates their due process rights under the Fifth Amendment.[4] In their supplemental supporting brief petitioners note that many of them have been incarcerated in excess of four years despite the fact that they are not presently serving a criminal sentence. They additionally argue that such prolonged civil detention in the absence of a criminal trial and sentence is improper. Their supplemental brief adds that their continued incarceration cannot be justified because: (1) it does not appear their deportation can be accomplished, or (2) betterment/protection of the public is not a plausible basis for their prolonged confinement.

■ Petitioners additionally assert that their confinement constitutes punishment under the Fifth Amendment and is therefore unconstitutional. This court initially notes

---

**3.** The respondent additionally notes that Cuba has not foreclosed the possibility of accepting the return of additional Mariel Cubans and that negotiations are continuing between both countries.

**4.** Petitioners also claim that the Cuban Review Plan fails to satisfy the due process requirements of the Fifth Amendment. The merits of this claim are addressed later in this opinion.

that petitioners' claim that their confinement constitutes "punishment" is without merit. Federal courts have routinely recognized that detention pending deportation is not punitive in nature but administrative. *Pena v. Thornburgh,* 770 F.Supp. 1153, 1159 (E.D.Tex.1991) (citing *Carlson v. Landon,* 342 U.S. 524, 537–38, 72 S.Ct. 525, 532–33, 96 L.Ed. 547 (1952)); *Alvarez–Mendez v. Stock,* 941 F.2d 956 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992) (detention not punitive in nature).

An alien seeking admission into the United States is afforded only those rights which Congress agrees to extend. *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 544, 70 S.Ct. 309, 313, 94 L.Ed. 317 (1950). "The government does not violate an excludable alien's process rights if it continues to detain him pending deportation even when the government offers no reason for the alien's continued detention." *Ramos v. Thornburgh,* 761 F.Supp. 1258 (W.D.La.1991) (citations omitted); *see also Fragedela v. Thornburgh,* 761 F.Supp. 1252, 1255 (W.D.Va.1991).

Furthermore, "there is no explicit statutory limit to the length of time which such a person [excludable alien] can be detained." *Sanchez v. Kindt,* 752 F.Supp. 1419, 1424 (S.D.Ind.1990). The court in *Alvarez–Mendez* noted that when "immediate removal from the country is not possible, detention is not an excessive means" of accomplishing protection of society from a potentially dangerous alien. *Supra.* 941 F.2d at 962. In *Sanchez,* the district court concluded that there "is no viable basis in the Due Process Clause of the Fifth Amendment" which provides a Mariel Cuban detainee the right to freedom from detention. *Id.* 752 F.Supp. at 1428.

This court agrees with the conclusions reached in both *Sanchez* and *Ramos,* as well as other federal courts which have reached similar conclusions. *See also Barrios v. Thornburgh,* 754 F.Supp. 1536 (W.D.Okl. 1990); *Garcia–Mir v. Meese,* 788 F.2d 1446 (11th Cir.1986), *cert. denied,* 479 U.S. 889, 107 S.Ct. 289, 93 L.Ed.2d 263 (1986). In conclusion, a Mariel Cuban is not entitled to habeas relief from administrative detention on the basis that said detention violates the Due Process Clause of the Fifth Amendment.

### Sixth Amendment

Petitioners next argue that their ongoing detention infringes their rights under the Sixth Amendment. It has been recognized that excludable aliens are entitled to some protections under the Sixth Amendment. However, these protections are only available to those excludable aliens who face criminal prosecution. *United States v. Gavilan,* 761 F.2d 226 (5th Cir.1985) (right to effective counsel); *United States v. Henry,* 604 F.2d 908, 914 (5th Cir.1979) (right to *Miranda* warning).

It has been routinely recognized that with regards to Mariel detainees, "the Sixth Amendment is not implicated because immigration proceedings and detention do not constitute criminal proceedings or punishment." *Ramos,* 761 F.Supp. at 1260 (citing *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1989)); *see also Pena,* 770 F.Supp. at 1160 (a Mariel Cuban's detention "is an administrative not a criminal proceeding, thus, the Sixth Amendment does not apply"). Consequently, since the instant petitioners' detention is indisputably the result of administrative proceedings, the Sixth Amendment is clearly inapplicable. The court will dismiss this claim as meritless.

### Due Process

Petitioners next argue that the Cuban Review Plan fails to satisfy the Fifth Amendment requirements of due process. They note that while the plan provides each Mariel detainee with an annual review on his parole status, at their review petitioners are not provided with legal counsel; the opportunity to call witnesses, and the right to cross-examine witnesses.

They further note that immigration authorities have no obligation under the plan to disclose to petitioners in advance the evidence which will be relied upon in reaching their decision. Petitioners also note that the plan does not require that a detainee be provided with reasons for denial of reparole and allows the INS to only give generalized reasons for their decision to deny parole. Thus, they conclude that the annual review is

constitutionally inadequate because it denies them due process of law.

The Congress has statutorily determined that Mariel Cuban detainees are entitled to certain limited due process, the requirements of which they have set forth in the Cuban Review Plan. It is undisputed that the Cuban Review Plan requires that each petitioner receive a yearly review. If parole release is not recommended, a personal interview is provided to the detainee, at which time he/she may submit either orally or in writing any information which they feel provides support for their release on parole. Additionally, a detainee may be accompanied by a person of his choosing at his interview.

As previously noted under *Knauff*, an alien seeking admission into this country is entitled to only those rights which Congress has provided him. Furthermore, "whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Palma v. Verdeyen*, 676 F.2d 100, 105 (4th Cir.1982) (citations omitted); *see also Pena*, 770 F.Supp. at 1160 (a Mariel detainee "is entitled to only the due process which Congress has provided to him").

In the instant case this court similarly agrees that petitioners are only entitled to that due process which Congress has given to them. It is clear based on this court's review of the voluminous records submitted that each of the instant petitioners has received the due process which is required under the Cuban Review Plan and, therefore, there is no need to undergo a case by case analysis of each petitioner's individual procedural history.

### Prolonged Detention Not Authorized by Congress

Petitioners' next argument is that Congress has not authorized the prolonged and indefinite detention of Mariel Cuban detainees. Specifically, they assert that Congress has not given the Attorney General power to indefinitely detain petitioners. The petitioners argue that 8 U.S.C. § 1226(c) does not expressly allow for indefinite detention. Furthermore, even if it did, it can not (1) be applied retroactively and thus is not binding on the instant petitioners or (2) does not

apply to aliens against who final order of exclusion has been entered.

■ They acknowledge that the Ninth Circuit in *Alvarez–Mendez* contradictorily ruled that § 1226 granted the Attorney General explicit statutory authority to indefinitely detain Mariel Cubans and that although § 1226 could not be applied retroactively, that legislation merely legalized the prior detention of Mariel Cubans.

In *Palma*, the Fourth Circuit ruled "indefinite detention of a permanently excluded alien deemed to be a security risk, who is refused entry to other countries is not unlawful." Furthermore, in *Gallego v. INS*, 663 F.Supp. 517 (W.D.Wisc.1987), it was held that since Mariel detainees receive an annual review of their status, their detention can not be deemed indefinite. Similarly, in *Pena*, the district court in addressing the merits of a form petition apparently identical to the one initially filed in this action, held that "releasing only those detainees who meet the statutory criteria is clearly within the broad discretion given to the Attorney General in immigration parole matters." *Pena*, 770 F.Supp. at 1158 (citations omitted).

Additionally, because the Cuban Review Plan provides for an annual review of parole eligibility, the detention of Mariel Cuban detainees can not be viewed as indefinite. *Sanchez*, 752 F.Supp. at 1431; *see also Barrios v. Thornburgh*, 754 F.Supp. 1536, 1540 (W.D.Okl.1990) (the Attorney General "has implicit statutory authority" to hold a Mariel detainee upon a finding that his parole would not be in the public interest).

This court agrees with the conclusion reached in the above-cited cases, all of which found the view of the Fourth Circuit in *Palma* to be correct. Consequently, this court likewise finds that the Attorney General has implicit statutory authority to detain petitioners and that since each petitioner receives an annual review of his parole eligibility, their detention is neither prolonged nor indefinite.

### International Law

■ Petitioners' final claim is that their detention violates customary international law. The United States Supreme Court in *The Paquete Habana*, 175 U.S. 677, 20 S.Ct.

290, 44 L.Ed. 320 (1900) recognized that international law is part of the laws of the United States. However, the Court added that international law is controlling only in those cases where there is no treaty and no controlling executive or legislative act or judicial decision. *Id.* at 700, 20 S.Ct. at 299. Furthermore, Congress in enacting legislative law, is not bound by international law. *United States v. Merkt,* 794 F.2d 950, 964 n. 16 (5th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987).

 The Congress, by passing the Cuban Review Plan, has clearly enacted statutory law which controls the detention of the Mariel Cuban, as well as their instant claims. Consequently, any customary international law is inapplicable.

This court additionally notes that other federal courts which similarly addressed this issue have likewise concluded that habeas claims by Mariel Cubans that their continual detention violates international law are without merit. *Garcia–Mir,* 788 F.2d at 1453; *Fragedela,* 761 F.Supp. at 1255. Consequently, the court finds that the remaining argument raised by petitioner is likewise without merit.

*Conclusion*

In conclusion, the court finds that the instant petitioners have received all the due process to which they are entitled; their continued detention is both authorized by Congress and customary international law is not controlling in this case. Since the actions of the INS and Attorney General were in accordance with law, this court can not conclude that they either abused their discretion or acted in a arbitrary and capricious manner. The court will dismiss the case. An appropriate order will enter.

AND NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The consolidated petitions for writ of habeas corpus are denied.

2. The Clerk of Court is directed to close the case.

3. Any appeal from this order will be deemed frivolous, without probable cause and not taken in good faith.