Gerard James CATNEY, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE

No. 98–3154.

United States Court of Appeals, Third Circuit.

Argued March 26, 1999.

Decided May 25, 1999.

Thomas E. Moseley (Argued), Newark, NJ, for Petitioner.

Frank W. Hunger, Assistant Attorney General, David M. McConnell (Argued), Assistant Director, Office of Immigration Litigation, Civil Division, United States

Justice Department, Washington, DC, for Respondent.

Before: BECKER, Chief Judge, LEWIS and WELLFORD,* Circuit Judges.

## OPINION OF THE COURT

BECKER, Chief Judge.

This is one of the tidal wave of cases seeking relief from orders of deportation brought by permanent resident aliens who have committed certain enumerated crimes. While many of these individuals are long-time residents with deep roots in American communities, they face virtually automatic deportation under recent amendments to the Immigration and Nationality Act ("INA"), although in many cases the INS has only recently taken note of their long past criminal activities.[1] While the Attorney General previously could exercise discretion to grant relief from such deportation orders, that discretion—as well as the right to judicial review of denials of such discretionary relief—has largely been eliminated by the recent amendments to the INA in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").

The Petitioner is Gerard James Catney, a permanent resident alien ("PRA") who was born in Northern Ireland, arrived in this country in 1962, at the age of three, and has lived here for thirty-seven years. He has been married for almost twenty years to a United States citizen and he has a five-year old daughter who is also a United States citizen. Catney credibly argues that the Board of Immigration Ap-

peals ("BIA") incorrectly applied one provision of AEDPA to his case, and that one provision of AEDPA and another provision of IIRIRA violate the equal protection component of the Fifth Amendment's Due Process Clause. The government disputes each of these contentions, and further submits that Catney has waived his right to raise his constitutional claims before us because he did not file a brief with the BIA and did not raise one of the constitutional issues in his notice of appeal to the BIA from the Immigration Judge's decision.

We decline to reach any of these issues, however, because we read our recent decision in *Sandoval v. Reno*, 166 F.3d 225 (3d Cir.1999), as precluding our exercising jurisdiction over Catney's petition.[2] Rather, we conclude that Catney must raise his claims of legal error—whether constitutional or otherwise—in a petition for habeas corpus if he is to obtain relief from the BIA's order.

## I. *AEDPA and IIRIRA*

### A. *Judicial Review of Deportation Orders*

In 1996, Congress enacted both AEDPA and IIRIRA, which dramatically restricted the scope of federal court review of certain deportation orders. *See* AEDPA, Pub.L. No. 104–132, § 440(a), 110 Stat. 1214, 1276–77 (1996); IIRIRA, Pub.L. No. 104–208, div. C, §§ 306(a)(2)(C), 309(c)(4)(G), 110 Stat. 3009–546, –607 to –608, –626 to –627 (1996). Prior to the enactment of these statutes, courts of appeals could review most orders of deportation. *See* 8 U.S.C. § 1105a (repealed by IIRIRA). However, section 440(a) of AEDPA provides that "[a]ny final order of deportation

---

* Honorable Harry Wellford, United States Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. *See, e.g.,* Monica Rhor, *For Joe Velasquez, There May Be No Second Chance,* Phila. Inquirer, Mar. 31, 1999, at B1; Mirta Ojito, *Old Crime Returns to Haunt an Immigrant,* N.Y.

Times, Oct. 15, 1997, at B1; Pamela Constable, *Years Later, Immigrants Pursued by Their Pasts,* Wash. Post, Feb. 24, 1997, at B1.

2. The government filed a petition for rehearing en banc in *Sandoval* on April 26, 1999. On May 7, 1999, an order was issued by this Court denying that petition.

against an alien who is deportable by reason of having committed a criminal offense covered in [various sections of the INA][3] shall not be subject to review by any court." *Id.* § 1105a(a)(10) (repealed by IIRIRA).

Section 309(c)(4)(G) of IIRIRA provides for transitional judicial-review rules that apply to cases commenced before April 1, 1997, in which a final order of deportation was filed after October 30, 1996, while IIRIRA section 306(a)(2)(C) (codified at 8 U.S.C. § 1252(a)(2)(C) (Supp. II 1996)) sets forth the appropriate judicial-review mechanism for cases commenced on or after April 1, 1997. The latter two provisions are, for our purposes, similar to AEDPA section 440(a). The INS commenced deportation proceedings against Catney in 1992. The BIA entered a final order of deportation against him on February 11, 1998. This case is therefore governed by the transitional rules of IIRIRA.

## B. *Relief from Deportation*

Although "criminal aliens" such as Catney have long been subject to deportation, at least two provisions of the INA formerly provided these aliens with the opportunity to seek discretionary relief from deportation: section 212(c), and section 212(h), which we discuss *infra*.

### 1. Section 212(c)

Section 212(c) gave the Attorney General discretion to waive deportation of certain PRAs. *See* 8 U.S.C. § 1182(c) (repealed 1996). Prior to 1990, section 212(c) provided that, notwithstanding section 212(a)'s provisions for exclusion of certain aliens, "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General," with certain limited exceptions.

In a series of decisions, the BIA (which acts on behalf of the Attorney General) had interpreted section 212(c) to apply not only to PRAs who had temporarily left the country and were "returning to a lawful unrelinquished domicile," as the statute literally provides, but also to those PRAs who had left and returned, and then—at some later date—faced deportation. Therefore, PRAs who lived here for seven or more years and never left the country were not covered by section 212(c)'s waiver provision, but PRAs who lived here for seven or more years, and during that time happened to take a trip abroad (even a day-trip to Canada), would be eligible for the section 212(c) waiver if they ever faced deportation. In 1976, the Second Circuit extended the section 212(c) waiver to the final group of PRAs, i.e., those who had never left the country. *See Francis v. INS,* 532 F.2d 268, 273 (2d Cir.1976). The INS acquiesced in the holding in *Francis,* and most courts of appeals followed it as well. *See, e.g., Katsis v. INS,* 997 F.2d 1067, 1070 (3d Cir.1993). Therefore, by the 1990s, section 212(c) offered all PRAs who had lawfully resided in this country for seven consecutive years the possibility of relief from deportation.

In 1990, section 212(c) was amended to eliminate a new category of cases from the Attorney General's discretion: PRAs deportable by reason of having committed certain aggravated felonies for which the alien had been imprisoned for at least five

---

**3.** The covered crimes include aggravated felonies, controlled substance convictions, certain firearm offenses, miscellaneous national security or defense crimes, and multiple convictions for crimes involving moral turpitude. In 1991, Catney pled guilty in New Jersey state court to armed robbery and armed burglary, and was sentenced to seven years imprisonment. Although Catney's brief describes the offense as a mere car theft, related to excessive drinking in response to stress, it was obviously of sufficient seriousness to trigger the statute. There is thus no dispute that Catney is a "criminal alien" subject to deportation under the INA, and that he is covered by the judicial-review and relief-from-deportation provisions we discuss in the text.

years. *See* Immigration Act of 1990, Pub.L. No. 101–649, § 511(a), 104 Stat. 4978, 5052. In 1996, AEDPA section 440(d) extended the list of ineligible PRAs much further, eliminating the Attorney General's discretion to grant relief from deportation for the same group of deportees for whom judicial review was curtailed in section 440(a) (i.e., those convicted of aggravated felonies, controlled substance offenses, certain firearm offenses, miscellaneous national security or defense crimes, or multiple convictions for crimes involving moral turpitude).[4] Therefore, under section 440(d) of AEDPA, criminal aliens such as Catney are ineligible for section 212(c) discretionary relief from the Attorney General. While the BIA has held that this provision applies retrospectively to cases pending on the date that AEDPA was enacted, we disagreed in *Sandoval*, holding that the provision does not apply to pending deportation cases such as Catney's. *See Sandoval*, 166 F.3d at 242.

### 2. Section 212(h)

Section 212(h) of the INA, like former section 212(c), provides the Attorney General with discretion to waive certain deportation orders. Section 212(h) permits the Attorney General to do so for those persons subject to deportation due to their commission of certain crimes if the alien is:

the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien; and the Attorney General, in his discretion, ... has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status.

8 U.S.C. § 1182(h)(1)(B), (h)(2) (1994 & Supp. II 1996). This provision clearly applies to Catney, whose wife and daughter are United States citizens. He is also the primary breadwinner for his family, running his own house painting business, which has been successful enough for the Catneys to purchase their own home in New Jersey. While his underlying request for section 212(h) relief is not before us, he appears to have a colorable claim to such relief.

Section 348(a) of IIRIRA, however, added the following proviso to section 212(h):

No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

8 U.S.C. § 1182(h) (Supp. II 1996).[5] As a PRA who has committed an aggravated

---

4. The specific language of the proviso in section 212(c), added by section 440(d) of AEDPA, reads as follows: "This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense [listed above]." The BIA has held that, because the proviso only speaks of "an alien who is deportable," it does not apply to a PRA who has left the country and is excludable (rather than deportable) by reason of conviction of one of the relevant offenses. *See In re Fuentes–Campos,* Int. Dec. 3318, 17 Immigr. Case Rep. (MB) B1–267, –269 (BIA May 14, 1997) (en banc) (rejecting the government's argument that the proviso should apply to PRAs facing exclusion).

The difference between exclusion and deportation is that an alien who is physically present in this country is subject to deportation, while an alien who is attempting to enter or return to the country is subject to exclusion. IIRIRA has, for all relevant purposes, eliminated any disparate treatment of aliens on the basis of whether they face deportation or exclusion, replacing these two proceedings with the single "removal" proceeding.

5. Unlike section 440(d) of AEDPA, the proviso added by IIRIRA clearly applies to pending

felony since his lawful admission to this country, Catney is covered by the proviso and is ineligible for relief by the terms of section 212(h).

### C. *Administrative Proceedings*

Catney initially sought relief from deportation under both section 212(c) and section 212(h). The Immigration Judge denied this relief on December 18, 1996. Catney filed a notice of appeal to the BIA, raising issues only under section 212(h). After initially seeking an extension of time in which to file a brief, his counsel failed to file one, and the BIA issued a summary dismissal of his appeal on February 11, 1998, pursuant to 8 C.F.R. § 3.1(d)(1–a)(i)(E) (1997). On March 9, 1998, represented by new counsel, Catney petitioned this Court for review of the BIA decision.[6]

### II. *Discussion*

### A. *Catney's Claims*

Catney raises three primary issues in his petition for review: (1) that section 440(d) of AEDPA should not be applied in cases such as his that were pending on AEDPA's enactment date; (2) that section 440(d) violates the equal protection component of the Fifth Amendment by irrationally distinguishing between PRAs facing deportation and PRAs facing exclusion; and (3) that section 348(a) of IIRIRA violates equal protection by irrationally denying relief from deportation to PRAs who have committed an aggravated felony since their *lawful* admission to the country,

while affording the opportunity for such relief to aliens who have committed an aggravated felony since their *unlawful* admission.[7]

Catney's first claim arises from the Attorney General's determination that AEDPA section 440(d), which forecloses criminal aliens such as Catney from obtaining section 212(c) relief, should be applied to cases pending on AEDPA's enactment date. We have recently held differently in *Sandoval*, 166 F.3d at 242, although, as we discuss below, Catney may obtain the benefit of our ruling, if at all, only through the filing of a habeas petition. Catney's second claim is based on the elimination of discretionary relief from *deportation* for criminal aliens under amended section 212(c), without a concomitant elimination of discretionary relief from *exclusion* for criminal aliens. *See supra* note 4. Catney argues that this distinction fails rational basis review and violates the equal protection component of the Fifth Amendment because there is no rational justification for Congress to afford criminal aliens outside of the country more generous treatment than it does those like him who remain in the country.

For his third claim, Catney likewise argues that the distinction drawn by Congress violates equal protection. Under the IIRIRA amendment to section 212(h), aggravated felons who are lawful residents are ineligible for the family hardship waiver from deportation, while aggravated felons who arrived in this country illegally remain eligible for the waiver. Catney

---

cases such as the present one. IIRIRA provides that the amendment made by section 348(a) "shall be effective on the date of enactment of this Act [September 30, 1996] and shall apply in the case of any alien who is in exclusion or deportation proceedings as of such date unless a final administrative order in such proceedings has been entered as of such date." IIRIRA § 348(b), 110 Stat. at 3009–639. As noted, Catney was in deportation proceedings on September 30, 1996, and his deportation order was not final until February 11, 1998. Therefore, section 348(a) applies to him.

**6.** On May 11, 1998, Catney also filed, through his new counsel, a motion to the BIA seeking to reopen his case and to stay his deportation. This motion remains pending before the BIA.

**7.** *See In re Michel,* Int. Dec. 3335, 18 Immigr. Case Rep. (MB) B1–108, –111 (BIA Jan. 30, 1998) (en banc) ("We find that the language of the amendment to section 212(h) of the Act provides plainly that the aggravated felony bar to eligibility for relief applies only to an alien who has previously been admitted to the United States for lawful permanent residence.").

argues with some force that there is nothing rational about a law that favors those who have committed at least two crimes— illegal entry to this country and then an aggravated felony—over those who have committed only one—an aggravated felony, following lawful admission to the country.

As noted, the government contends that Catney has waived these issues by not briefing them before the BIA and by failing to raise the section 440(d) issues in his notice of appeal to the BIA. It also contests Catney's substantive arguments regarding the retrospective application of section 440(d) and the constitutionality of the two provisions discussed above.

### B. *Jurisdiction*

 We retain jurisdiction to adjudicate statutory or constitutional claims such as those raised by Catney, as well as to review denials of relief from deportation, in the case of most aliens other than criminal aliens. *See* 8 U.S.C. § 1252(a)(1) (Supp. II 1996) (providing for judicial review of final order of removal in the courts of appeals); *id.* § 1252(b)(4) (outlining the scope and standard of judicial review of a final order of removal); *id.* § 1252(b)(9) (providing that judicial review of all factual and legal questions, "including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien ... shall be available only in judicial review of a final order under this section"). However, following passage of AEDPA and IIRIRA, we no longer have jurisdiction to review a denial of discretionary relief to a criminal alien such as Catney. *See id.* § 1252(a)(2)(C); *Morel v. INS*, 144 F.3d 248, 252 (3d Cir.1998).

Further, we conclude that any challenge by a criminal alien to the BIA's interpretation of the immigration laws or to the constitutionality of these laws must be made through a habeas petition.[8] Therefore, we decline to reach the substantive issues raised by Catney or the government's waiver arguments.

Although it may have been unclear following passage of AEDPA and IIRIRA whether a criminal alien such as Catney could raise statutory or constitutional issues in a petition for review of a deportation order, *Sandoval* has resolved this issue for cases arising in our circuit. *Sandoval* was a consolidated appeal that included both a petition for review of a BIA order and an appeal from a district court order granting the petitioner habeas relief. We concluded that habeas jurisdiction survived AEDPA's and IIRIRA's limitations on judicial review of certain deportation orders, but that direct review did not. *See Sandoval,* 166 F.3d at 231–38. We noted "that this reading [of the statutes] comports with our obligation to read statutes to avoid serious constitutional problems, such as those we would face were IIRIRA read to take away habeas jurisdiction as well as [direct] review." *Id.* at 237. We concluded our discussion of the jurisdiction issue as follows:

> Recognizing that its interpretation [i.e., that AEDPA and IIRIRA preclude habeas review] might lead to just such a constitutional dilemma, the government contends that under the 1996 amendments there is jurisdiction in the courts of appeals to entertain claims of "substantial constitutional error" by aliens in Sandoval's position. *This argument*

---

**8.** A circuit split on this issue currently exists. *Compare LaGuerre v. Reno,* 164 F.3d 1035 (7th Cir.1998) (habeas relief is no longer available to criminal aliens facing deportation, but constitutional claims may be raised on direct review in court of appeals), *and Richardson v. Reno,* 162 F.3d 1338 (11th Cir. 1998) (habeas relief is no longer available), *certiorari granted, judgment vacated by,* ——— U.S. ———, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999), *with Goncalves v. Reno,* 144 F.3d 110 (1st Cir.1998) (habeas relief remains available), *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999), *Henderson v. INS,* 157 F.3d 106 (2d Cir.1998) (same), *cert. denied,* —— U.S. ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999), *and Sandoval,* 166 F.3d at 238 (same).

*must fail* because of the absence of any support, either in the statute or in the legislative history. The government's briefs cite no provision of AEDPA or IIRIRA that supports its reading and *it conceded at oral argument that there is no specific provision granting us jurisdiction over substantial constitutional claims.* Although the government's argument would have more force if there were a constitutional imperative to read the 1996 statutes in that manner, our conclusion that the statutes have left habeas jurisdiction intact in the district courts removes any such imperative.

*Id.* at 237–38 (emphases added).

■ Even following *Sandoval,* our jurisdiction to hear claims of "substantial constitutional error" on petitions for review of BIA orders was somewhat unclear. *See, e.g., id.* at 238 n. 6 ("Because of our conclusion that [habeas jurisdiction] covers statutory, as well as constitutional claims, we need not decide whether the claimed existence of jurisdiction in the courts of appeals to review substantial constitutional claims, but not statutory claims, would be an adequate alternative."). Indeed, at different times, each of the parties (Catney and the INS) took the position that jurisdiction was present, and then that it was lacking, even over Catney's claims of constitutional error. *See, e.g.,* Pet'r Br. at 13–16; Pet'r Mot. to Defer Arg. at 1–2; INS Suppl. Mem. at 1; Statement of INS Counsel at Oral Arg. We are now satisfied that under the jurisprudence of this Court, following passage of AEDPA and IIRIRA, we have no jurisdiction to review criminal aliens' final orders of removal, including such aliens' claims of statutory or constitutional error. *See Sandoval,* 166 F.3d at 237–38. Thus, lacking jurisdiction to entertain Catney's constitutional challenges to AEDPA and IIRIRA, or to adjudicate his claim that the BIA has incorrectly applied section 440(d) of AEDPA to his

case, the Petition for Review will be dismissed.[9]

---

**9.** Catney also filed a motion for a stay of deportation pending judicial review of the order of deportation. Because we conclude

that we have no jurisdiction to review the deportation order, Catney's motion for a stay of that order will be denied as moot.