Juan Aguila **RODRIGUEZ,** Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. Civ.A.3:98–CV–622.

United States District Court, M.D. Pennsylvania.

July 16, 1999.

cause its agents supply ingredients for a commission of a crime or contraband to a defendant." *Mance,* 619 A.2d at 1381.

Juan · Aguila Rodriguez, petitioner pro se.

Kate L. Mershimer, Harrisburg, PA, for respondent. ·

## MEMORANDUM AND ORDER

NEALON, District Judge.

Rodriguez, a Cuban citizen, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on April 15, 1998, claiming that he is being wrongfully incarcerated pending resolution of his deportation proceedings. (Doc. 1). United States Magistrate Judge Thomas M. Blewitt issued a Report and Recommendation on April 30, 1999, recommending that Rodriguez's petition for a writ of habeas corpus be dismissed because this Court lacks jurisdiction to hear the claim. (Doc. 12). Rodriguez objected to the Report on May 24, 1999, raising a constitutional argument among other exceptions. (Doc. 15). The matter has been fully briefed by the parties, and is thus ripe for determination by this Court. For the following reasons, the Report and Recommendation will not be. adopted, and the petition will be denied on the merits.

## BACKGROUND

Petitioner, a citizen of Cuba, arrived in the United States as a result of the Mariel Boatlift on May 15, 1980. (Doc. 6, p. 1, referencing Attachment 1). In 1982, Rodriguez pled guilty to rape in Travis County, Texas, and received an eight year sentence. (Doc. 1, Attachment p. 2). On April 14, 1987, while released on parole to the United States Immigration Service, petitioner pled guilty to aggravated assault on a peace officer, and received a three year sentence. *Id. See also* Doc. 6, p. 1, Attachment 2. Rodriguez claims that the incident arose while he was incarcerated and under investigation for another unnamed charge. (Doc. 1, Attachment p. 2). According to petitioner, he was simply trying to "explain to the official that he was being detained for nothing" as he was innocent of the new charges. *Id.* The confrontation escalated into a "fight" and, consequently, Rodriguez was charged with, and pled guilty to, aggravated assault on a peace officer. *Id.* He was imprisoned until February 23, 1988, when he was again released to the United States Immigration Service (Immigration Service) in Houston on parole.[1] (Doc. 12, p. 2). On June 26,

---

1. Petitioner points out that on June 11, 1991, the "original charge that caused his detainer [sic] was dismissed." *Id.*

1991, petitioner was again placed into custody for violating the conditions of his parole. *Id.* Rodriguez alleges that the parole violation was the result of a miscommunication between the state of Texas and the Immigration Service and that, moreover, he was improperly denied the assistance of counsel and "the opportunity to be heard within a Court of law" regarding the parole revocation. (Doc. 1, Attached p. 3). Although released to the Immigration Service on parole on June 11, 1992, the Texas Department of Criminal Justice issued a clemency discharge of sentence to petitioner on January 4, 1995, which eliminated his parole status as he no longer had any obligation on the sentence.

In the meantime, on June 18, 1992, petitioner was detained by the United States Immigration and Naturalization Service (INS) and charged as an excludable alien pursuant to the Immigration and Nationality Act (INA), § 212(a)(2)(A)(I)(I) (commission or conviction of a crime involving moral turpitude), § 212(a)(2)(B) (conviction of two or more offenses for which the aggregate sentence exceeds five years), and § 212(a)(7)(I)(I) (immigrant, at the time of application for admission, failed to possess a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document and valid unexpired passport). An Immigration Judge ordered Rodriguez excluded and deported from the United States on July 15, 1992, and the Board of Immigration Appeals agreed and dismissed petitioner's appeal as frivolous on September 21, 1992. (Doc. 6, p. 2, Attachment 1 regarding exclusion proceedings). Rodriguez has remained in INS custody since 1992 because Cuba refuses to accept his return to the country. (Doc. 6, p. 2).

While incarcerated, petitioner has been reviewed annually before the Cuban Review Panel pursuant to 8 C.F.R. § 212.12, during which times respondent claims he has never accepted responsibility for his actions. (Doc. 6, p. 2). In addition, Rodriguez has received numerous misconducts in prison for violent behavior, insolence, and gross disrespect toward female corrections officers to which he retorts that "he knows they really are attracted to him." (Doc. 6, p. 2). However, review of the pertinent documents provided by respondent reveal that although the Associate Commissioner for Enforcement determined on November 5, 1997 that Rodriguez's release on parole was not warranted, the accompanying interview review summary sheet indicates that the Cuban Review Panel found "virtually no basis for this alien's continued detention." (Doc. 6, Attachment 3). The panel also considered that petitioner has previously successfully completed a halfway house program, and recommended that he again be released to a halfway house "that can provide adequate structure." *Id.* Of the prior review panel findings submitted to the Court by petitioner, three of the four recommended that Rodriguez be released, and one recommended continued detention. (Doc. 6, Attachment 3, all documents). However, the Associate Commissioner for Enforcement has continually declined to release petitioner. *Id.*

## ANALYSIS

When objections to a report and recommendation have been filed, under 28 U.S.C. § 636(b)(1)(C), the Court must make a *de novo* consideration of those portions of the report addressed by the objections. *See Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir.1989). In so doing, the Court may accept, reject, or modify, in whole or in part, the findings and recommendations contained in the report. 28 U.S.C. § 636(b)(1); Local Rule 72.31. Further, the Court may, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. *See United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir.1984).

Rodriguez asserts two central grounds for relief in the petition: first, he alleges

that he is "being held unlawful [sic] because petitioner never enter [sic] into any Court of law;" and second, that the "warrant for petitioner [sic] arrest was invalid [sic] because it came after the parole revocation hearing." (Doc. 1, p. 3). In his objections to the Report and Recommendation, petitioner first contends that § 242(g) of the INA as amended by § 306(a) of the IIRIRA, 8 U.S.C. § 1252(g), is unconstitutional as applied to petitioner "in both scope and effect as it precludes habeas corpus review of illegal detention or confinement and thus is violative of the 'suspension clause' of the Constitution." (Doc. 15, para.1). Petitioner further argues that the Supreme Court decision in *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), cited by the Magistrate Judge does not address the issue of habeas corpus review, and therefore is not controlling. *Id.* at para.2.

Respondent primarily argues that this Court lacks jurisdiction to hear Rodriguez's claims pursuant to 8 U.S.C. § 1252(g).[2] (Doc. 6, p. 4). That section provides:

> (g) EXCLUSIVE JURISDICTION. Except as provided in this section and notwithstanding any other provision of law, no Court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [the INA].

That section "shall apply without limitation to claims arising from all past, pending or future exclusion, deportation, or removal proceedings under such Act." IIRIRA § 306(c)(1). According to respondent, these sections strip the district courts of the authority to entertain habeas corpus petitions from detainees such as Rodriguez, because the detention of aliens during the removal period constitutes a decision by the Attorney General incident to executing removal orders. Therefore, as respondent argues, the Court is divested of jurisdiction over petitioner's claim and, consequently, the petition should be dismissed. Alternatively, respondent contends that the petition should be dismissed for failure to state a claim because the decision to expel or exclude aliens is a fundamental sovereign political power which is largely immune from judicial intervention. (Doc. 6, p. 7) (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953)).[3] Moreover, respondent claims that "the indefinite detention of an inadmissible or excludable alien while awaiting removal is not a due process violation." (Doc. 6, p. 8) (citing *Barrera–Echavarria v. Rison*, 44 F.3d 1441 (9th Cir.1995)).

### 1. Habeas Jurisdiction

In the Report and Recommendation, Magistrate Judge Blewitt concluded that, even in light of the thorough analysis and holding in *Sandoval*, this Court lacked jurisdiction over petitioner's claim pursuant to the more recent February Supreme Court decision in *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). The petitioner in *Sandoval* was a citizen of Mexico who initially entered the United

---

**2.** Also § 242(g) of the Immigration and Naturalization Act, as amended by § 306(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, § 601, 110 Stat. 3009 (1996).

**3.** On January 28, 1999, Magistrate Judge Blewitt issued a Report and Recommendation embracing respondent's argument and suggesting that the petition be dismissed for lack of jurisdiction. (Doc. 7). Shortly after that

Report was penned, the Third Circuit Court of Appeals decided *Sandoval v. Reno*, 166 F.3d 225 (3d Cir.1999), which held that habeas jurisdiction survived the statutory amendments at issue. While reserving its initial position in contravention of the Third Circuit decision, respondent then relied on its prior alternative argument that Rodriguez's petition be dismissed on the merits. (Doc. 10, p. 1 n. 1, p. 2).

States without inspection in 1986, but was granted temporary resident status in 1987 as a Special Agricultural Worker under the amnesty program created by the Immigration Reform and Control Act of 1986, § 302. 8 U.S.C. § 1160. *See Sandoval,* 166 F.3d at 228. Sandoval was granted Lawful Permanent Resident status in 1990, and in 1993 he was convicted of possession of marijuana, rendering him deportable under the INA, § 241(a)(2)(B)(I) (currently 8 U.S.C. § 1227(a)(2)(B)(I)). *See id.* After a deportation hearing and several appeals to the Board of Immigration Appeals (BIA), Sandoval filed a petition for a writ of habeas corpus with the United States District Court for the Eastern District of Pennsylvania, and the government moved to dismiss the petition for lack of jurisdiction. *See id.* The *Sandoval* Court noted that prior to the enactment of the Anti-terrorism and Effective Death Penalty Act (AEDPA) on April 24, 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) on September 30, 1996, judicial review of deportation orders proceeded either by filing a Petition for Review directly with the Court of appeals, or submitting a petition for a writ of habeas corpus pursuant to INA § 106(a)(10). *See id.* at 229, 234 (noting that habeas jurisdiction existed prior to and independently of § 106(a)(10) as established by case precedent). The AEDPA deleted the text of § 106(a)(10), and substituted the following provision: "[a]ny final order of deportation against an alien who is deportable by reason of having committed a criminal offense ... [covered by the INA's deportation provisions] shall not be subject to review by any Court." AEDPA § 440(a), codified at 8 U.S.C. § 1105a(a)(10).[4] Later, § 306(a) of the

IIRIRA amended § 242(g) of the INA to provide that:

> (g) EXCLUSIVE JURISDICTION. Except as provided in this section and notwithstanding any other provision of law, no Court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [the INA].

8 U.S.C. § 1252(g).[5] Thus, because neither the AEDPA nor the INA as amended by the IIRIRA expressly repealed habeas jurisdiction for review of deportation orders, the Third Circuit Court posited the issue in *Sandoval* as follows: "whether habeas jurisdiction remains available in the district courts to review claims by aliens who have been ordered deported based on their criminal acts, notwithstanding the AEDPA and IIRIRA amendments relied on by the government." *Sandoval,* 166 F.3d at 231. This same issue will be addressed in the instant case in light of respondent's adversarial position regarding the *Sandoval* holding.

▮▮▮ Relying on Supreme Court decisions spanning more than a century, the *Sandoval* Court embraced the notion that "courts should not lightly presume that a congressional enactment containing general language effects a repeal of a jurisdictional statute, and, consequently, that only a plain statement of congressional intent to remove a particular statutory grant of jurisdiction will suffice." *Id* at 232 (citing *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1868); *Ex parte Yerger,* 75 U.S. (8 Wall.) 85, 19 L.Ed. 332 (1868); *Nishimura Ekiu v. United States,* 142

---

4. In September 1996 with the enactment of the IIRIRA, the review scheme for deportation orders was again altered by the passage of two sets of rules, the "permanent rules" applicable to aliens placed in removal proceedings on or after April 1, 1997, and the "transitional rules" applicable to those aliens placed in removal proceedings before April 1, 1997. *Sandoval,* 166 F.3d at 229.

5. Also § 242(g) of the Immigration and Naturalization Act, as amended by § 306(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, § 601, 110 Stat. 3009 (1996).

U.S. 651, 12 S.Ct. 336, 35 L.Ed. 1146 (1892); *Heikkila v. Barber,* 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953); *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)). Reasoning that this longstanding historical framework supports the tenet which disfavors repealing jurisdictional statutes by implication rather than express revocation, the Court stated that "[a]s there is no express reference to jurisdiction under 28 U.S.C. § 2241 in this provision, the rule disfavoring implied repeals requires us to conclude that jurisdiction under § 2241 is preserved under the amended INA § 242(g)." *Id.* at 236. Moreover, the Third Circuit's interpretation is in line with another well established doctrine which requires courts to avoid reading statutes in a threateningly unconstitutional manner. The Suspension Clause of the United States Constitution specifically mandates that "[t]he Privilege of the Writ of Habeas Corpus *shall not be suspended,* unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. A limited exception exists for removing habeas jurisdiction when a collateral remedy remains available which is neither inadequate nor ineffective to test the legality of a person's detention. *See id.* at 237 (citing *Swain v. Pressley,* 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977)). However, as the Court of Appeals indicates, the amendments at issue, if read as respondent suggests, would effectively eliminate all review of executive detention leaving no collateral remedy. (Doc. 10, n. 1). *See Sandoval,* 166 F.3d at 237. Consequently, without a clear and plain statement that Congress sought to completely eliminate habeas jurisdiction under § 2241, the Third Circuit concluded that habeas jurisdiction survives the 1996 amendments.[6] *See id.* at 238. This Court agrees with the Third Circuit's reasoning in the *Sandoval* decision, and will therefore entertain the claims in Rodriguez's habeas corpus petition.

Unlike the habeas review issue in *Sandoval,* subsequently in February of 1999 the Supreme Court addressed whether 8 U.S.C. § 1252(g) deprived the federal courts of jurisdiction to hear a claim of selective enforcement with regard to the institution of deportation proceedings against aliens with visas. *See Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). The aliens in *American–Arab Anti–Discrimination Committee* brought suit against the Attorney General, *et al.,* claiming that they were targeted for deportation proceedings as a result of their affiliation with an unpopular political group, the Popular Front for the Liberation of Palestine (PFLP). *See id.* at 938. In scrutinizing the language of § 1252(g), the Supreme Court identified a narrow spectrum of ·cases to which the provision would apply: "[t]he provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* at 943. The Court continued, "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings" because of the need for precision in legislative drafting. *Id.* Noting that because the Executive has discretionary authority not only to institute deportation proceedings, but also to terminate proceedings or decline to enter final orders of deportation for humanitarian or other reasons, referred to as "deferred action," the Court believed that § 1252(g) "seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations...." *Id.* at 944. Importantly, the Court confronted a selective enforcement claim *on direct review* aimed squarely at the Attorney General's decision to institute deportation proceedings against a group of

---

**6.** The Court further concluded that both Sandoval's statutory and constitutional claims

were equally cognizable in the habeas proceeding. 166 F.3d at 238.

individuals, and did not entertain the issue of whether habeas jurisdiction, statutory or constitutional, survived the amendments. Moreover, the Court noted in a footnote that the Courts of Appeals are in disagreement over the issue of whether habeas jurisdiction survived the amendments, but did not resolve the issue directly.[7]

Subsequent to the *American–Arab Anti–Discrimination Committee* decision, the Third Circuit revisited the habeas jurisdiction issue in *Catney v. Immigration & Naturalization Service*, 178 F.3d 190 (3d Cir.1999), and again enforced the *Sandoval* decision which held that "habeas jurisdiction survived [the] AEDPA's and IIRIRA's limitations on judicial review of certain deportation orders, but that direct review did not."[8] *Id.* at 195. Catney filed a Petition for Review of the Board of Immigration Appeals' (BIA) order, arguing that the BIA incorrectly applied a provision of then AEDPA to his case, and that a provision of the AEDPA and a provision of the IIRIRA violate his right to equal protection guaranteed by the Fifth Amendment to the United States Constitution. *See id.* Embracing the *Sandoval* decision, the Third Circuit concluded that it did not have jurisdiction to review a denial of discretionary relief to a criminal alien in a Petition for Review, and that Catney's challenges to the constitutionality of the amendments must be made via habeas corpus petition and not by way of Petition for Review. *See id.* at 196.

Therefore, although the Circuit Courts of Appeals are currently in disagreement over this issue,[9] in light of the rule of law confirmed in this circuit by the holding in *Catney* notwithstanding the *American–Arab Anti–Discrimination Committee* decision, this Court retains jurisdiction to entertain Rodriguez's habeas corpus petition. *See also Grant v. Zemski*, 54 F.Supp.2d 437 (E.D.Pa.1999) (Reed, J.).[10]

### 2. Rodriguez's Claim

■ As noted above, petitioner asserts that he is being unlawfully incarcerated on an INS detainer without due process, and that his arrest was invalid because it postdated his parole revocation hearing. (Doc. 1). Respondent addresses only the first contention, countering that the indefinite detention of an inadmissible or excludable alien while awaiting removal is not a due process violation. (Doc. 6, p. 8) (citing *In re Mariel Cuban Habeas Corpus Petitions*, 822 F.Supp. 192, 194 (M.D.Pa.1993)). The present case is compounded by the fact that Rodriguez has been incarcerated on INS detainer for seven years with no prospect for actual deportation since Cuba has refused to permit him to re-enter the country. Thus, Rodriguez could potentially remain in custody indefinitely, presuming that the Associate Commissioner for Enforcement continues to deny his applica-

---

7. *See* 525 U.S. 471, 119 S.Ct. 936, 942 n. 7, 142 L.Ed.2d 940.

8. Catney, a permanent resident alien from Ireland, was married to a United States citizen for twenty years, and together they had a five-year old daughter, also a U.S. citizen. *See id.* at 191. Catney committed an undisclosed criminal offense, and the INS instituted deportation proceedings against him. *See id.*

9. *Cf. Yang v. INS*, 109 F.3d 1185 (7th Cir. 1997), and *LaGuerre v. Reno*, 164 F.3d 1035 (7th Cir.1998) *with Goncalves v. Reno*, 144 F.3d 110 (1st Cir.1998), *Henderson v. INS*, 157 F.3d 106 (2d Cir.1998), and *Sandoval v. Reno*, 166 F.3d 225 (3d Cir.1999).

10. It is noteworthy that the Supreme Court recently granted certiorari in two cases involving the issue of whether habeas corpus review survived the statutory amendments in question, and vacated and remanded both cases for further consideration in light of the recent *American–Arab Anti–Discrimination Committee* decision. *See Richardson v. Reno*, 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999), and *Magana–Pizano v. INS*, 526 U.S. 1001, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999). The *Richardson* case was decided by the Eleventh Circuit, which held that habeas jurisdiction was eradicated by the statutory amendments, while *Magana–Pizano* was a Ninth Circuit case which held that the statutory elimination of habeas jurisdiction was unconstitutional.

tions for release. As noted above, the Supreme Court did not decide in *American–Arab Anti–Discrimination Committee* whether the district courts may review an alien's claims by way of habeas corpus petition should those allegations fit within the three discrete decisions or actions the Attorney General may take to "commence proceedings, adjudicate cases, or execute removal orders" against such an alien. 119 S.Ct. at 943. Proceeding on the conclusion that habeas review is not precluded by the statutory amendments in light of *Catney*, Rodriguez is still not entitled to relief under present controlling case law.

■■■ A nonresident unadmitted alien has no constitutional right of entry into the United States. *See Kleindienst v. Mandel*, 408 U.S. 753, 762, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); *DKT Memorial Fund Ltd. v. Agency for International Development*, 887 F.2d 275, 284 (D.C.Cir.1989); *Reznik v. United States Dept. of Justice*, 901 F.Supp. 188, 190 (E.D.Pa.1995). Further, an alien seeking formal admission into the United States is afforded only those rights which Congress is willing to extend. *See In re Mariel Cuban Habeas Corpus Petitions*, 822 F.Supp. 192, 196 (M.D.Pa.1993) (citing *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950)). While the Supreme Court noted that once physically within the borders of the United States, aliens may be "expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law," *excludable* aliens have no constitutional procedural due process rights regarding admission or exclusion. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953); *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir.1995); *Padron–Baez v. Warden*, No. 95–320, 1995 WL 419799 at *5 (D.N.J. July 10, 1995).[11] In short, the Fifth Amendment does not provide an excludable Mariel Cuban alien the right to be free from administrative detention.[12] *See In re Mariel Cuban Habeas Corpus Petitions*, 822 F.Supp. at 196 (citing *Sanchez v. Kindt*, 752 F.Supp. 1419, 1428 (S.D.Ind.1990)). Moreover, there exists no statutory limit to the length of time such an excludable alien may be detained administratively. *See* 822 F.Supp. at 196 (citing *Sanchez*, 752 F.Supp. at 1424). Therefore, " '[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.' " *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir.1995) (citing *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950)); *Palma v. Verdeyen*, 676 F.2d 100, 105 (4th Cir.1982).[13]

■■■ In 1987, federal regulations were enacted creating new parole procedures for Mariel Cuban detainees (the Cuban Review Plan). *See* 8 C.F.R. §§ 212.12–13. The Plan provides for an initial file review subsequent to parole revocation, and annu-

---

**11.** As the Fifth Circuit noted, while the law is clear that excludable aliens have no procedural due process rights in the admission process, the law is not so well-established with regard to substantive rights, such as the right to be free from gross physical abuse at the hands of government officials and certain rights attached to criminal proceedings, such as Miranda warnings. *See Barrera–Echavarria*, 44 F.3d at 1449 (citing *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir.1987) and *United States v. Henry*, 604 F.2d 908, 914 (5th Cir.1979)).

**12.** "[I]mmigration proceedings and detention do not constitute criminal proceedings or punishment." *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). Thus, detention of an excludable alien incident to deportation is an administrative, not punitive, detention.

**13.** There exists what is referred to as an "entry fiction," which provides that while aliens seeking admission into the United States may be physically permitted to remain within its borders pending a determination of admissibility, " 'such aliens are legally considered to be detained at the border and hence as never having effected entry into this country.' " *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir.1995) (citing *Gisbert v. Attorney General*, 988 F.2d 1437, 1440 (5th Cir.1993)).

**646**

al reviews thereafter. *Id.* In order for the detainee to be granted parole, a review panel, chosen from members of the INS professional service, must consider the following factors in making their recommendation: whether the detainee is presently a non-violent person; whether he is likely to remain non-violent; whether he is likely to pose any threat to the·community; and whether he is likely to violate the conditions of his parole. *Id. See also In re Mariel Cuban Habeas Corpus Petitions,* 822 F.Supp. at 195. The panel may also consider the detainee's mental health condition, past criminal history, institutional progress, any disciplinary infractions while in custody, ties to the United States and any other information the panel finds probative. *See* 8 C.F.R. § 212.12. *See also In re Mariel Cuban Habeas Corpus Petitions,* 822 F.Supp. at 195. However, the regulations clearly state that the Attorney General retains substantial discretion in accepting or rejecting the Review Panel's findings and recommendations. *See* 8 C.F.R. § 212.12(b). *See also Padron–Baez,* No. 95–320, 1995 WL 419799 at *1 (D.N.J. July 10, 1995). In addition, this Court's review of parole related decisions of the INS is limited to whether the agency's decision was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. *See Moret v. Karn,* 746 F.2d 989, 991 (3d Cir.1984); *In re Mariel Cuban Habeas Corpus Petitions,* 822 F.Supp. at 195.

In the present case, the law is clear that Rodriguez's detention as an excludable alien is administrative in nature and, therefore he is accorded only limited procedural due process protections. Petitioner has been afforded annual reviews by the Cuban Review Panel pursuant to the applicable federal regulations. The fact that the Commissioner for Enforcement, designee of the Attorney General, has not granted him parole as recommended by the Panel does not by itself implicate his due process rights: as noted above, the regulations unmistakably grant the Attorney General (or designee) broad discretion

in making the final parole determination. Furthermore, while Rodriguez may contend that he will be imprisoned indefinitely, he still receives annual reviews by the Panel, and may be paroled when the Commissioner for Enforcement deems it appropriate under the factors considered. As Rodriguez has been accorded the rights conferred upon him as a Mariel Cuban detainee, no violation of due process has occurred.

The Court will therefore focus its attention on whether the decision to deny petitioner's request for parole was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. Rodriguez was convicted of rape and aggravated assault on a peace officer in addition to being placed in custody for violating the conditions of his parole. While incarcerated, the petitioner received numerous misconducts for fighting, insolence and gross disrespect toward female corrections officers. Based upon the available record, the evidence does not support a finding that the decision to deny Rodriguez parole was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. As such, Rodriguez's petition for a writ of habeas corpus will be denied. An appropriate order will follow.

### ORDER

ACCORDINGLY, this 16th day of July, 1999, based upon the preceding memorandum, IT IS HEREBY ORDERED THAT:

1). Rodriguez's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DENIED;

2). The Clerk of Court is directed to close the case; and

3). The Court concludes that there is no basis for the issuance of a Certificate of Appealability.